[Cite as *State v. Morant*, 2021-Ohio-3160.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

CORNELIUS RODRIGUEZ MORANT,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 BE 0020**

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 19 CR 0046.

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan, Belmont County Prosecutor, Atty. Daniel Fry, Assistant Prosecuting Attorney,* 47 A-West Main Street, St. Clairsville, Ohio  43950, for Plaintiff-Appellee and

*Cornelius Rodriquez Morant, pro se*, #A776-967, Lebanon Correctional Institute, State Route 63, P.O. Box 56, Lebanon, Ohio 45036 for Defendant-Appellant.

Dated:  September 10, 2021`

––––––––––––––

**Robb, J.**

{¶1}   Defendant-Appellant Cornelius Rodriguez Morant appeals his felony conviction of failure to comply with an order or signal of a police officer, which was entered in the Belmont County Common Pleas Court after a bench trial.  He contends his jury waiver was not valid and his speedy trial rights were violated.  He also sets forth arguments on the sufficiency and weight of the evidence and the admissibility of evidence. Various arguments cannot be addressed without a transcript and/or are not fully briefed. Appellant also complains about the maximum sentence.  For the following reasons, the trial court's judgment is affirmed

STATEMENT OF THE CASE

{¶2}   Appellant was arrested on February 3, 2019, after fleeing from an attempted traffic stop in Belmont County just prior to midnight on February 2, 2019.  He was held in jail until he made bail on March 22, 2019.

{¶3}   On April 4, 2019, Appellant was indicted for violating R.C. 2921.331(B), which provides:  "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."  He was charged with a third-degree felony under division (C)(5)(a)(ii):  "The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property."

{¶4}   He initially failed to appear for arraignment.  On April 22, 2019, he was arraigned, his bond was reinstated, he confirmed his waiver of counsel in order to represent himself, and the court appointed stand-by counsel.  (4/24/19 J.E.).  Appellant had previously waived counsel at an anticipated plea hearing prior to the indictment which was scheduled after negotiations occurred between the state and defense counsel. (3/19/19 J.E.).

{¶5}   On June 24, 2019, Appellant failed to appear at the pretrial.  The bond agent later reported Appellant was in South Carolina (where he lived).  Several weeks later, he

was arrested on the court's warrant; however, he remained in South Carolina as he had pending charges there.

**{¶6}** He was not returned to Ohio until April 18, 2020. The court received notice of his return to the state and ordered him held without bond until trial. (4/20/20 J.E.). The trial was originally scheduled as a jury trial but proceeded as a bench trial due to Appellant's jury waiver, which was filed on July 16, 2020 and memorialized at a hearing the same day. The bench trial was held on July 21, 2020, and the court found Appellant guilty as charged.

**{¶7}** The court's July 23, 2020 judgment entry recited various factual findings: on February 2, 2019 at 11:56 p.m., a sergeant with the Ohio State Highway Patrol was patrolling westbound traffic on interstate 470; the roads were not snow-covered but were wet from recent snow; the sergeant noticed Appellant's van headed east; the van seemed to be traveling at an excessive rate of speed; the sergeant crossed the median and caught up to Appellant's vehicle; the sergeant used his radar, which showed Appellant's speed was 85 in a 65 mph zone; the sergeant then activated his lights and siren; and Appellant continued to drive and pass other vehicles.

**{¶8}** Appellant exited the interstate at State Route 7 north of Bellaire (near the Ohio River and state border). He stopped at the red light at the end of the exit but then made a u-turn onto the entrance ramp to 470 (which had choices for both 470 east to West Virginia and 470 west towards the area of original encounter). The sergeant sped ahead to block access to the ramp leading to West Virginia. Appellant then traveled west on 470, driving over the speed limit and passing vehicles with the sergeant following him.

**{¶9}** Around mile marker 1 (approaching the exit to the Ohio Valley Mall), a trooper assisted the sergeant by deploying a spike strip, which punctured at least one of the tires on Appellant's vehicle. At one point, Appellant drove his vehicle very close to the back of a tractor-trailer vehicle. Appellant exited and turned right on Banfield Road, ignoring the stop sign and failing to signal the turn. Next, he turned right/east on State Route 40 without first stopping for the red light.

**{¶10}** After one of his tires appeared to shred apart, Appellant drove into a motel parking lot and exited the vehicle while it was in reverse, causing it to hit the trooper's cruiser. He ran around a neighboring building and was found hiding near a parked

vehicle. As the court pointed out, Appellant refused to surrender despite three "taze warnings" and was "tazed" when it appeared he was trying to flee again. The sergeant testified Appellant appeared impaired and Appellant said he had active warrants in West Virginia.

{¶11} A copy of the dashboard camera video recording was played and admitted into evidence. (7/23/20 J.E.). Appellant elected to testify and read a lengthy statement at trial, which the court said it would also consider as his closing argument.

{¶12} The court's entry noted Appellant conceded guilt as to the misdemeanor level of failure to comply with an order or signal of a police officer and pointed out Appellant had multiple opportunities to safely stop his vehicle. The court concluded his refusal to do so upon a police officer's audible and visual signals to stop was willful fleeing and eluding and additionally found his continued operation of the vehicle under the totality of the circumstances created a substantial risk of serious physical harm to both persons and property.

{¶13} The sentencing hearing was held on July 27, 2020. The court imposed the maximum sentence of 36 months in prison and a five-year license suspension.

{¶14} Appellant filed a timely document which was construed as notice of appeal. Appellant's brief lists 8 "propositions of law" in the table of contents. "The appellant shall include in its brief, under the headings and in the order indicated, all of the following: * * * (3) A statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected; [and] (4) A statement of the issues presented for review, with references to the assignments of error to which each issue relates." App.R. 16(A)(3)-(4). This is required to be set forth after the table of contents and table of authorities. App.R. 16(A)(1)-(2).

{¶15} Appellant's brief fails to comply with these provisions. Moreover, some of the eight propositions listed in the table of contents are set forth in the body of the brief, and some are not. And, he sets forth assignments of error in the body of the brief which were not listed in the prefatory pages, some of which he apparently expects this court to correlate with certain propositions of law and one of which does not correspond to any proposition of law.

## SPEEDY TRIAL

**{¶16}** For instance, Appellant did not list a speedy trial issue in the prefatory section of the brief. It appears the state did not notice the assignment of error on speedy trial as the state's brief responds only to the eight propositions of law listed in the preface. Nevertheless, the first assignment of error set forth within the argument section of Appellant's brief contends:

"The trial court erred conducting a bench trial after speedy trial statute expired."

**{¶17}** Appellant claims his speedy trial rights were violated. The speedy trial time for a felony is 270 days. R.C. 2945.71(C)(2). Appellant restricts his argument to the time between his April 2020 arrest by Ohio authorities (after extradition from South Carolina) and his July 21, 2020 trial. *See* R.C. 2945.72(A) (tolling while incarcerated due to criminal proceedings in another state and during the pendency of extradition). *See also* R.C. 2945.72(D) (tolling during any period of delay occasioned by the neglect or improper act of the accused, such as prior to his South Carolina arrest when he failed to appear for his Ohio pretrial).

**{¶18}** Appellant points to his entitlement to triple time while held in the Belmont County jail lieu of bail, which he says started on April 17, 2020. *See* R.C. 2945.71(E). He states this would result in 95 days passing until trial, which would total 285 days with triple time applied (if there were no tolling events). We note the pre-sentence investigation report states Appellant was arrested by Ohio authorities on April 18, 2020 and the return on the Ohio warrant similarly states he was arrested on this date. Regardless, Appellant states this is greater than 270 days and claims the speedy trial test solely involves a count of the days (times three). However, speedy trial time is tolled by "[a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused." R.C. 2945.72(E).

**{¶19}** During the time contested by Appellant, he filed the following motions (with the following date-stamps): motion to remove stand-by counsel (5/5/20), motion to dismiss (5/7/20), motion for complaint and for discoverable material (5/21/20), motion for discovery inspection and two motions to dismiss (5/29/20), motion to dismiss complaint (6/16/20), motion to appoint counsel (6/22/20), motion to compel law enforcement (7/2/20), motion for contempt (7/8/20), bill of complaint and motion to dismiss (7/10/20),

motion to advise prosecutor on time limits and motion for perjury (7/13/20), and motion to suppress video (7/15/20).

{¶20} We also note, on July 2, 2020, defense counsel and the prosecutor informed the court of a plea agreement with a stipulated sentence which the court set for hearing. At the July 6, 2020 plea hearing, Appellant decided not to enter the plea, and the court ruled on his motion involving the video. (7/9/20 J.E.). On July 16, 2020, the court held a hearing, memorialized Appellant's jury waiver filed the same day, and overruled the motion to suppress. (7/20/20 J.E.). The other motions were disposed of on the same day they were date-stamped; they were typically received earlier but lacked case captions so were not filed until the court instructed the clerk to do so. We also note Appellant attempted to appeal non-final orders in May and June, resulting in 20 BE 13 and 20 BE 14 (which were dismissed).

{¶21} Appellant does not discuss the effect of his motions on speedy trial time. In any event, the entire period he contests was tolled (and there was clearly still time remaining on the speedy trial clock before he failed to appear for his June 24, 2019 pretrial).

{¶22} Upon being notified of Appellant's local custody, the court originally set the pretrial (and potential plea hearing) for May 11, 2020 and the trial for May 21, 2020. (4/20/20 J.E.). After the May 11, 2020 pretrial, the court issued an entry stating the trial was sua sponte continued to the next available trial date on July 21, 2020 due to the pandemic and to permit the defendant to receive discovery. (5/13/20 J.E.). In disposing of Appellant's July 13 motion (complaining of time limits), the court explained the July 21, 2020 date was the first relatively safe date available due to the pandemic and the need to protect the jurors, court personnel, and participants. (7/15/20 J.E.).

{¶23} Appellant's position on appeal depends on his argument that the trial court could not toll speedy trial time by granting the May 13, 2020 continuance on the basis of the Covid-19 pandemic. However, speedy trial time is tolled not only by a defendant's motions and request for a continuance but is also tolled by: "the period of any reasonable continuance granted other than upon the accused's own motion." R.C. 2945.72(H).

{¶24} Upon Appellant's April 2020 return to Ohio via extradition after his failure to appear in this case, the trial court's scheduling of the pretrial for May 11, 2020 and the

Case No. 20 BE 0020

jury trial for May 21, 2020 was a reasonable sua sponte continuance. A court is not expected to immediately hold a trial after a defendant is returned to the state following a ten-month absence.

**{¶25}** This is especially true here, considering the declaration of national and state emergencies in March 2020 due to the pandemic (and the work to safely prepare for jurors). And, the trial court's subsequent sua sponte continuance from May 21, 2020 to July 21, 2020 was also reasonable under the circumstances of the Covid-19 pandemic. *See, e.g., In re Disqualification of Fleegle*, 161 Ohio St.3d 1263, 2020-Ohio-5636, 163 N.E.3d 609, ¶ 7; *State v. Robinson*, 11th Dist. Trumbull No. 2020-T-0048, 2021-Ohio-1064, ¶ 33-34.

**{¶26}** In fact, Appellant's speedy trial time was tolled during the entire period after his return to Ohio due to a superseding statute. On March 27, 2020, the legislature tolled all statutory time limitations in criminal cases that were set to expire between March 9, 2020 and July 30, 2020. *See* 2020 Am. Sub. H.B. 197, Section 22(A)(3),(10),(B),(C) (tolling retroactive to March 9, 2020, which shall last until the sooner of July 30, 2020 or the expiration of the declaration of emergency in the Executive Order 2020-01D). (The emergency declared by the governor lasted longer than the longest end date in the act; so, the end date for tolling under the emergency act was July 30, 2020.) This emergency act was enacted as "an emergency measure necessary for the immediate preservation of the public peace, health, and safety" to "respond to the declared pandemic and global health emergency related to COVID–19." *Id.* at Section 40. *See also* Ohio Constitution, Article II, Section 1d.

**{¶27}** Even after the July 30, 2020 tolling ended, "trial judges have the authority to continue trials for defendants on a case-by-case basis without violating speedy-trial requirements * * * courts may suspend jury trials to prevent the spread of the coronavirus and they may do so consistent with state and federal speedy-trial obligations." *Fleegle*, 161 Ohio St.3d 1263 at ¶ 7, citing 2020 Ohio Atty.Gen.Ops. No. 2020-002 and Ohio Supreme Court Coronavirus Resources. Here, the period contested by Appellant entirely occurred within the pandemic tolling period of 2020 Am. Sub. H.B. 197. In accordance, Appellant's speedy trial argument lacks merit.

Case No. 20 BE 0020

## JURY WAIVER

**{¶28}** Appellant's first four propositions of law all contain phrases related to a jury trial, citing: R.C. 2945.05 (jury waiver), R.C. 2945.17(A) (right to be tried by jury), R.C. 2945.36 (reasons for discharge of jury), and R.C. 2945.24 (selecting jury for criminal case). The right to a jury in the second cited statute can be waived under the first cited statute, and if the waiver was proper, then clearly the last two cited statutes are inapplicable. On this topic, the second assignment of error set forth in Appellant's brief alleges:

"Trial court erred when it proceeded with a bench trial."

**{¶29}** Appellant suggests there are only two facts relevant in this case to the issue of the jury waiver: (1) in a July 9, 2020 entry, the judge said the jury trial will remain set for July 21, 2020; and (2) the judge held a bench trial on July 21, 2020 (as memorialized in the July 23, 2020 entry). As to the jury waiver topic, Appellant sets forth five pages of case reviews, without properly connecting them to the occurrences in his case. As he acknowledges, the standards for the jury waiver are provided by the following statute:

In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I _____, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."

Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.

R.C. 2945.05. *See also* Crim.R. 23(A) ("In serious offense cases the defendant before commencement of the trial may knowingly, intelligently and voluntarily waive in writing his right to trial by jury.").

**{¶30}** On July 16, 2020, Appellant filed a handwritten and signed jury waiver which repeated the language quoted in the statute. As required by R.C. 2945.05, it was "entitled in the court and cause" (unlike most of his other filings). As the state points out, the jury waiver was "filed in said cause and made a part of the record thereof" as it was date-stamped and docketed.

**{¶31}** On the same day the jury waiver was filed in the record, the court filed an entry setting Appellant's jury waiver for a hearing later that day. (7/16/20 J.E.). The next day, the court filed an entry memorializing the occurrences at the hearing on the jury waiver (and other topics). The entry noted the prosecutor, Appellant, and stand-by counsel appeared at the hearing where:

> The Court reviewed with Defendant his absolute right to have all of the trial issues decided by a jury of twelve people. The Court also explained that if the Defendant waives that right, the Court, instead, would become the decider of those issues. Defendant indicated his understanding of those rights and consequences. He then affirmed his Waiver of right to a jury trial. Therefore, Defendant's trial on July 21, 2020, will proceed as a trial to the Court.

(7/20/20 J.E.).

**{¶32}** Appellant did not order the transcript of this hearing or provide a substitute under App.R. 9. In such event, we presume the validity of the lower court's proceedings where the record does not show invalidity. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). There is no reason to question whether the hearing proceeded as recited in the court's entry. And, a court need not provide a verbatim recitation of the occurrences at the jury waiver hearing in an entry. In any event, Appellant does not specifically address the court's recitation in the entry or claim his waiver was not knowingly, voluntarily, or intelligently entered. "Moreover, a written waiver is presumptively voluntary, knowing, and intelligent." *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 106 (waiver of jury in capital case).

**{¶33}** The fact Appellant prepared, signed, and filed the jury waiver before the court reviewed it with him at the hearing is irrelevant as he affirmed his waiver at the hearing. In other words, the jury waiver did not have to be re-signed and re-filed after the

hearing. "[T]here is no rule pertaining to when the filing must occur." *State v. Howard*, 8th Dist. Cuyahoga No. 86117, 2006-Ohio-2060, ¶ 8 (where the defendant complained the waiver was filed after trial). The jury waiver need not be signed in open court where the defendant signed it before the hearing on the waiver and where the court had the defendant "affirm his Waiver of the right to a jury trial" (as stated in the court's entry). *See Jackson*, 141 Ohio St.3d 171 at ¶ 103, 109 (where the defendant provided the court with a waiver that had already been signed before the hearing), citing *State v. Sanders*, 188 Ohio App.3d 452, 2010-Ohio-3433, 935 N.E.2d 905, ¶ 13 (10th Dist.) (where the defendant answered in the affirmative when the trial court said, "[I]t is my understanding that you have waived your right to a jury trial and would like to have the court decide this case"); *State v. Strickland*, 183 Ohio App.3d 602, 2009-Ohio-3906, 918 N.E.2d 170, ¶ 18, 44 (8th Dist.); *State v. Stewart*, 8th Dist. Cuyahoga No. 86396, 2006-Ohio-1072, ¶ 11.

{¶34} There was strict compliance with R.C. 2945.05, Appellant's jury waiver was valid, and the record contains no indication Appellant withdrew the valid jury waiver before the commencement of trial. Consequently, this assignment of error and the first four propositions of law lack merit.

<u>EVIDENCE AT TRIAL</u>

{¶35} Appellant's (misnumbered) third, fourth, and fifth assignments of error, which are set forth within the argument section of Appellant's brief, contend:

"The trial court erred in finding Appellant guilty as charged with a lack of credible evidence."

"Trial court erred when stating [the sergeant] was patrolling west bound on I-470 as dash cam clearly does not show that he was patrolling westbound as he was traveling in an eastbound direction nowhere in view of Appellant's vehicle as [the sergeant] stated that 90 seconds prior to the pursuit was removed from dash cam but assumes that probable cause for traffic stop was a speeding infraction violation that also was not recorded or present at the testimony or evidence on records to support sufficient findings as credible evidence."

"Trial court erred in testing the sufficiency of the evidence of the probable cause element of speeding to support the traffic stop in Appellant's case 19CR46."

**{¶36}** As to related "propositions of law," Appellant's sixth proposition of law (set forth under these assignments of error) refers to the speed limit and cites R.C. 4511.21 (a statute on assured clear distance). In the table of contents, he lists his fifth proposition of law as "Reports or certified copies to be admitted under R.C. 2317.42," his seventh proposition of law as "Requirement of authentication or identification Evid.R. 901, 902," and his eighth proposition of law as "Exceptions to the rule against hearsay pursuant to Evid.R. 803."

**{¶37}** There are various briefing failures as to these assignments of error and propositions of law. Appellant's brief sets forth pages of law and case reviews without connecting it to his case. Many principles cited are unexplained or irrelevant. As he did not order the transcript, he failed to cite to the transcript in support of the facts and the alleged errors as required by App.R. 16(A)(6)-(7). Pursuant to App.R. 9(B)(1), "it is the obligation of the appellant to ensure that the proceedings the appellant considers necessary for inclusion in the record, however those proceedings were recorded, are transcribed in a form that meets the specifications of App.R. 9(B)(6)."

**{¶38}** In lieu of a transcript, an "Agreed Statement as the Record on Appeal" can be submitted by the parties, "showing how the issues raised in the appeal arose and were decided in the trial court and setting forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issues presented." App.R. 9(D). *See also* App.R. 9(C) (if there is an issue with the recording). The provisions in App.R. 9(C) or (D) were not invoked here.

**{¶39}** "The appellant shall order the transcript in writing and shall file a copy of the transcript order with the clerk of the trial court." App.R. 9(B)(3). "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp*, 61 Ohio St.2d at 199.

**{¶40}** On the matter of evidentiary rulings, absent a transcript of proceedings, we must presume the regularity of the proceedings below. Without the transcript, we cannot discern various important items, including: whether objections were warranted; whether

objections were made on the record at the trial; the reasons for the trial court's decision to admit the evidence; the content of the evidence; or the existence of prejudice.

**{¶41}** This is also true as to Appellant's claims about the sufficiency and the weight of the evidence. "If the appellant intends to present an assignment of error on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the weight of the evidence, the appellant shall include in the record a transcript of proceedings that includes all evidence relevant to the findings or conclusion." App.R. 9(B)(4).

**{¶42}** Finally, we provide some brief explanations as to certain suggestions in Appellant's brief. Appellant suggests the direction of travel was significant. According to the trial court's entry discussing the trial evidence, the sergeant was *initially* monitoring the westbound traffic but decided to cross the median upon noticing Appellant's van drive past at what appeared to be a high rate of speed. Next, unlike some of the cases cited by Appellant, the sergeant did not rely on the visual observation for his testimony on speeding and his reason for the stop. Rather, the trial court reported that after the sergeant crossed the median and caught up to Appellant, he engaged his "radar unit" which showed a speed of 85 mph in a 65 mph zone. As to the moment of video activation, any footage while the officer was facing the other direction or turning his vehicle around would be irrelevant. Moreover, there is no requirement that a dashboard mounted camera incorporate the radar readout.

**{¶43}** Additionally, Appellant cites a case requiring finding insufficient evidence where there was no scientific evidence on radar and the court failed to take judicial notice of reliability. However, the Supreme Court has ruled the scientific principles underlying radar and laser speed-measuring devices are sufficiently reliable to be admissible in evidence without expert testimony on reliability and the trial court is not required to specifically take judicial notice of the scientific principles underlying the technology. *City of Brook Park v. Rodojev*, 161 Ohio St.3d 58, 2020-Ohio-3253, 161 N.E.3d 511, ¶ 13, 17. Regardless, Appellant's practice of merely citing cases and providing a sentence on the legal holding in each case does not properly brief an issue to an appellate court. *See* App.R. 16(A)(6) (the brief shall contain a statement of facts relevant to the assignments of error), (7) (the brief shall contain "[a]n argument containing the contentions of the

appellant with respect to each assignment of error presented for review and the reasons in support of the contentions" in addition to "the citations * * * on which appellant relies").

**{¶44}** The trial court's entry suggests Appellant raised, at the bench trial, a lack of probable cause to stop him; however, the trial court ruled the sergeant had sufficient cause for activating his lights and sirens based on the speed recorded by radar.[1] This would constitute the required reasonable suspicion for a stop (and would also provide probable cause). *See State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 21-24 ("Probable cause is certainly a complete justification for a traffic stop, but we have not held that probable cause is required."). The sergeant's credibility on speeding was within the province of the fact-finder. *See State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. And again, we have no transcript to review.

**{¶45}** Contrary to another of Appellant's suggestions, the Ohio State Highway Patrol's dashboard video showing the pursuit was not hearsay. Evid.R. 801(A),(C). *See also State v. Baker,* 5th Dist. Delaware No. 19 CAA 12 0062, 2020-Ohio-5094, ¶ 24. Where a video is not hearsay, the hearsay exceptions need not be considered. *See State v. Moody*, 2d Dist. Montgomery No. 26926, 2016-Ohio-8366, ¶ 66 ("Evid.R. 803(8) does not apply to * * * cruiser video recordings"). Furthermore, statements by the defendant are not hearsay. Evid.R. 801(D)(2)(a).

**{¶46}** Appellant also cites Evid.R. 901, which provides all evidence must be properly authenticated before it is admissible into evidence. A video is properly authenticated when there is evidence "sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). "By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule: (1) Testimony of Witness With Knowledge. Testimony that a matter is what it is claimed to be." Evid.R. 901(B). The sergeant who chased Appellant testified at trial. "The preliminary issue presented in a motion in limine

---

[1] Appellant's pretrial motion to suppress, filed on July 15, 2020, merely argued: the video was inaccurate and not authenticated; the video would cause unfair prejudice, confusion, and delay under Evid.R. 403; it was not timely provided to him (where it was previously provided to counsel and then the jail lacked the technology to play it); and it was not supplemented with body camera footage. After a hearing, the court overruled the motion saying: the state cannot produce evidence which does not exist, there is no evidence of misconduct, the delay was the result of his failure to appear, he had the opportunity to examine the video, and his other concerns were trial issues. The issues of admissibility and authenticity had to be raised at trial to be preserved regardless of the pretrial motion.

must be renewed at trial when the evidence is actually presented or the argument made therein is waived for purposes of appeal." *State v. Baker*, 2020-Ohio-7023, 166 N.E.3d 601, ¶ 30 (7th Dist.). There is no indication the state failed to authenticate the video or the defense voiced an objection at the proper time *at trial*.

**{¶47}** Moreover, the statute cited in Appellant's brief was not applicable to the video and contains no prohibitory language. R.C. 2317.42 ("Official reports made by officers of this state, or certified copies of the same, on a matter within the scope of their duty as defined by statute, shall, in so far as relevant, be admitted as evidence of the matters stated therein."). It is also noted the original video was not required; a copy was permissible. Evid.R. 1003. The party seeking to exclude a duplicate cannot rely on mere speculation as to its authenticity, and the trial court has sound discretion to admit duplicates in lieu of originals. *State v. Dobrovich*, 7th Dist. Belmont No. 04 BE 10, 2005-Ohio-1441, ¶ 15 (if the defendant claims there is a genuine issue as to the trustworthiness of the duplicate, the trial court exercises its discretion in determining it is accurate).

**{¶48}** As for sufficiency, a conviction cannot be reversed on the grounds of insufficient evidence unless the reviewing court determines that no rational fact-finder could have found the elements of the offense proven beyond a reasonable doubt. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). The question is merely whether "*any* rational trier of fact" could have found the essential elements proven beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998). In conducting a sufficiency review, all of the evidence is to be viewed in light most favorable to the prosecution. *Id.* Reasonable inferences to be drawn from the evidence are also evaluated in the light most favorable to the state. *See State v. Filiaggi*, 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999). *See also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**{¶49}** The state was not required to show Appellant caused serious physical harm, only that he caused a *substantial risk* of serious physical harm to a person or to property. Circumstantial evidence inherently possesses the same probative value as direct evidence. *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). We were not provided the transcript, as discussed supra. Nevertheless, we refer to our review of the trial court's entry in our Statement of the Case above and point out the evidence set

forth in the trial court's entry was sufficient to support the conviction as a rational fact-finder could find the elements established beyond a reasonable doubt:  Appellant operated a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop and the operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.  R.C. 2921.331(B),(C)(5)(a)(ii).

**{¶50}** Next, when a defendant claims a conviction is contrary to the manifest weight of the evidence, the appellate court is to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997) (weight involves credibility and persuasiveness  of the evidence). The appellate court's discretionary power to grant a new trial on these grounds can be exercised only in the exceptional case where the evidence weighs heavily against the conviction.  *Id.*

**{¶51}** The trial court watched the video and heard the testimony of the sergeant, the trooper, and Appellant.  The weight of the evidence is primarily the function of the trier of fact who occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflection, and demeanor.  *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118; *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).  Again, we do not have a transcript to review.  If we had been provided with an App.R. 9 statement which echoed the trial court's entry setting forth factual findings, we would not conclude the decision was contrary to the manifest weight of the evidence.

**{¶52}** Appellant's third through fifth assignments of error (and his fifth through eighth propositions of law) are overruled.

SENTENCING

**{¶53}** Appellant briefly complains the maximum sentence of 36 months was unwarranted, claiming:  the crime was not the worst form of offense; he did not have the

greatest likelihood of recidivism, his sentence was higher than in similar cases; and his actions were justified because he was from a state with a high rate of police misconduct and he wanted to reach a safe area before pulling over. However, these sentencing arguments are made in the factual section of the brief. There is no assignment of error on sentencing; nor does he mention sentencing in the "propositions of law" within the table of contents. And, he fails to set forth law on the topic of sentencing. In addition, the facts do not support Appellant's claim that he was merely trying to peacefully reach a populated area.

**{¶54}** In any event, Appellant seems to be referring to standards that are no longer statutorily required in order to impose a maximum sentence: worst form of offense and greatest likelihood of recidivism. These are findings which existed under former R.C. 2929.14(C) and are no longer part of felony sentencing. *State v. Hudson*, 7th Dist. No. 15 MA 0134, 2017-Ohio-645, 85 N.E.3d 371, ¶ 39-40. Furthermore, there is no indication the sentence was not "consistent with sentences imposed for similar crimes committed by similar offenders" as mentioned in R.C. 2929.11(B). *See State v. Williams*, 2015-Ohio-4100, 43 N.E.3d 797, ¶ 52 (7th Dist.) (defendant's burden to produce evidence indicating disproportionality in felony sentencing based on sentences given to offenders *with similar records* who committed the offense under similar circumstances); *State v. Howard*, 7th Dist. Mahoning No. 15 MA 0031, 2016-Ohio-3246, ¶ 14 (disproportionality must be raised to the trial court).

**{¶55}** "The appellate court's standard for review is not whether the sentencing court abused its discretion." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 9-10, quoting R.C. 2953.08(G)(2) (and the sentence cannot be reversed unless the reviewing court clearly and convincingly finds (a) the record does not support the findings under specifically-cited statutes or (b) the sentence is otherwise contrary to law). We also note R.C. 2953.08(G) does not allow an appellate court to review whether the record supports the sentence as a whole under R.C. 2929.11 and R.C. 2929.12 as this would allow the appellate court to substitute its judgment for the trial court on the selection of a sentence. *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 28, 30-32, 38-39, 41-42.

{¶56} Although "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record," the trial court did so here. *See id.* at ¶ 20. The trial court's July 30, 2020 sentencing entry specifically stated the purposes and principles of sentencing in R.C. 2929.11 were considered and the seriousness and recidivism factors in R.C. 2929.12 were balanced. The court found none of the factors applied which would make the offense less serious or which would indicate the offender was less likely to commit future crimes, citing R.C. 2929.12(C) and (E).

{¶57} As to the facts indicating seriousness, the court incorporated its prior findings from the July 23, 2020 judgment, set forth in our Statement of the Case *supra*, which included a recap of the testimony, such as testimony on speeding and passing vehicles. The court made additional findings about the incident in the sentencing entry: the chase lasted more than 5 miles and many minutes; Appellant failed to stop at one stop sign and one stop light; he did not always use a turn signal; he made a u-turn and drove erratically at times; he followed a tractor-trailer too closely on wet roads with cold temperatures; he exited his vehicle while still in gear causing it to hit the trooper's vehicle; and he seemed impaired. *See* R.C. 2921.331(C)(5)(b).

{¶58} The court found Appellant showed no genuine remorse, has not responded favorably to prior sanctions, was likely to recidivate, and committed similar offenses in the past. He had three prior out-of-state convictions for "failing to stop for blue light." The court reviewed his felony convictions for weapon possession, criminal conspiracy, and procuring votes by bribery, plus multiple incidents of burglary and habitual traffic offender. The court also reviewed prior misdemeanor convictions for assault, larceny, giving false information, resisting arrest, drug possession, fraudulent checks, driving under the influence, and driving under suspension (multiple convictions). The court noted its review of the pre-sentence investigation report, which this court has reviewed as well. In sum, Appellant's sentence was not clearly and convincingly contrary to law.

{¶59} For the foregoing reasons, the trial court's judgment is affirmed.

Waite, J., concurs.

D'Apolito, J., concurs.

Case No. 20 BE 0020

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**