[Cite as *State v. Wilcox*, 2022-Ohio-3293.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

DENNIS J. WILCOX,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 MO 0004**

---

Criminal Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2021-030

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. James L. Peters*, Monroe County Prosecutor, 101 North Main Street, Room 15, Woodsfield, Ohio 43793, for Plaintiff-Appellee (No Brief Filed) and

*Atty. John M. Jurco,* P.O. Box 783, St. Clairsville, Ohio 43950, for Defendant-Appellant.

Dated: September 16, 2022

**D'APOLITO, J.**

{¶1}   Appellant, Dennis J. Wilcox, appeals from the July 26, 2021 judgment of the Monroe County Court of Common Pleas convicting him for aggravated possession of drugs, possessing drug abuse instruments, and use/possession of drug paraphernalia following a trial by jury and sentencing him to a total of 12 months.  On appeal, Appellant stresses that Appellee, the State of Ohio, presented insufficient evidence and that his convictions are against the manifest weight of the evidence.  Appellant further contends the trial court erred in sentencing him to the maximum.  Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

{¶2}   On January 21, 2021, Appellant was indicted by the Monroe County Grand Jury on three counts: count one, aggravated possession of drugs, a felony of the fifth degree, in violation of R.C. 2925.11; count two, possessing drug abuse instruments, a misdemeanor of the second degree, in violation of R.C. 2925.12; and count three, use/possession of drug paraphernalia, a misdemeanor of the fourth degree, in violation of R.C. 2925.14(C)(1).  Appellant was appointed counsel and entered a not guilty plea at his arraignment.

{¶3}   A trial by jury was held on July 19, 2021.

{¶4}   The State presented four witnesses: Misty Tolzda ("Tolzda"), the mother of Katrina Kahrig ("Kahrig"); Chief Cory Jones ("Chief Jones"), Chief of Police with the Woodsfield Police Department ("WPD"); Lisa Swisher ("Swisher"), a supervisor with the Monroe County Department of Job and Family Services, Children Services; and Kahrig.

{¶5}   Tolzda testified that her daughter, Kahrig, resided at a home Tolzda owns located at 410 Eastern Avenue, Woodsfield, Ohio.  In 2020, Tolzda had concerns about Kahrig's drug use and noticed unusual behavior.  Tolzda first contacted WPD in the beginning of December 2020.  Tolzda spoke with Chief Jones about Kahrig's issues.  Around the first or second week of December 2020, Tolzda became aware that Appellant was residing with Kahrig.  Tolzda did not want anyone living in the home besides her daughter and grandchildren.

{¶6} On one occasion in December 2020, Tolzda went to the home and her 13-year-old granddaughter answered the door. Tolzda observed Kahrig and Appellant "very scantily dressed" and "under the influence of something." (7/19/2021 Jury Trial Tr., p. 186). Tolzda also smelled marijuana in the vicinity of Appellant.

{¶7} Tolzda contacted WPD a second time after learning from her granddaughter that Kahrig and Appellant were involved with drugs. Tolzda's granddaughter sent her photos from the couple's bedroom of "a variety of drug paraphernalia, and hypodermic needles." (Id. at p. 188; State's Exhibits 1, 2, and 3). Specifically, the items included a razor blade, needles, syringes, some kind of a sticky residue, a spoon, a credit card, some kind of a pipe and a grinder, glass tubing devices, and some sort of a pop bottle lid. Tolzda sent the photos to Chief Jones.

{¶8} Chief Jones testified that he first became involved in this matter at the beginning of December 2020. Tolzda and Chief Jones had known each other professionally. Tolzda first contacted Chief Jones out of concern for her daughter, who had a previous history with narcotic abuse. Tolzda believed Kahrig was in the process of relapsing. Initially, Tolzda was unaware of the man's name that was residing with her daughter. At that time, Chief Jones "just logged the information in [his] mind and kept note of it." (7/19/2021 Jury Trial Tr., p. 210).

{¶9} On December 30, 2020, Tolzda made a formal report to Chief Jones identifying the man as Appellant. Chief Jones reviewed the photographs provided by Tolzda and obtained a search warrant. During the search, Chief Jones observed Kahrig and Appellant standing outside of their second floor bedroom. As some indication that Appellant was living there, Chief Jones observed men's clothes and Appellant's dog, "Hurricane." (Id. at p. 217). In the bedroom, Chief Jones "located several items that were exactly consistent with the photos that [he] was provided with from [Tolzda]" including "drug abuse instruments, drug paraphernalia, and [he] also located a substance that was a white crystalline substance that was suspected to be methamphetamine at the time." (Id. at p. 218).

{¶10} Numerous photographs were taken at the scene. (State's Exhibits 4-13). The items removed from the home included: 24 hypodermic syringes; an aluminum pop can bottom; a black digital scale; two blue tie-offs; a clear vial; multiple baggies; seven

syringes in a white sock; miscellaneous hypodermic needles; a hypodermic syringe pipe in a blue plastic box; a can containing a white crystalline substance; miscellaneous marijuana paraphernalia; a small plastic bag containing a dark substance; a spoon with a dark, wet substance; a spoon with a white substance; a small plastic baggie containing a crystalline substance; a small white cup containing residue; a small blue glass dish containing cotton; a glass pipe; and a pill bottle containing 25 Suboxone pills. Items were sent for testing and BCI prepared a report, revealing the presence of Methamphetamine. (State's Exhibit 15). Kahrig and Appellant were advised of their Miranda rights and arrested.

{¶11} Swisher testified that she received information that Kahrig was allegedly "abusing drugs again, and she was residing with a known drug user [Appellant] at the time." (7/19/2021 Jury Trial Tr., p. 257). Swisher spoke with both Kahrig and Appellant at the scene. Swisher's primary responsibility in responding to the call was for the safety of the children living in the home, although they were not present at the time of the search. Kahrig and Appellant admitted to Swisher that they had been using drugs. Kahrig tested positive that day for methamphetamine, heroin, amphetamines, opiates, THC, and Suboxone. Swisher did not ask Appellant for a test because he is not the father of the children involved in this case. Appellant conceded to using drugs with Kahrig.

{¶12} Kahrig testified that she is currently incarcerated in a lock down facility. Kahrig explained that Appellant had moved in with her in October 2020 and they used drugs together, including methamphetamine, Suboxone, and Subutex. Kahrig and Appellant were intimate and shared a bedroom. Kahrig indicated that most of the drug paraphernalia found in the bedroom were shared items. The methamphetamine was shared but obtained by Appellant.

{¶13} At the conclusion of the State's case, Appellant moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court. The defense did not present any witnesses.

{¶14} The jury found Appellant guilty on all counts as charged in the indictment.

{¶15} On July 26, 2021, following a sentencing hearing, the trial court sentenced Appellant to 12 months on count one, 90 days on count two (concurrent to count one), and 30 days on count three (concurrent to count one), for a total term of 12 months.

{¶16} Appellant filed a timely appeal and raises two assignments of error.[1]

## ASSIGNMENT OF ERROR NO. 1

**THERE WAS INSUFFICIENCY OF PROOF REGARDING ANY OF THE CHARGES RELATIVE TO DATE OF OFFENSE.**

{¶17} In his first assignment of error, Appellant specifically calls into question the sufficiency of the evidence and generally calls into question the weight of the evidence adduced at trial. (1/18/2022 Appellant's Brief p. 26-27). Appellant stresses there is no proof that he committed the offenses on or about December 30, 2020 as alleged in the indictment.

> When a court reviews a record for sufficiency, '(t)he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

> In determining whether a criminal conviction is against the manifest weight of the evidence, an Appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.* * *

---

[1] On January 18, 2022, Appellant filed his brief. On February 7, 2022, the State filed a "Notice Of Intent To Not File A Brief & Waiver Of Oral Argument."

The weight to be given to the evidence and the credibility of the witnesses are nonetheless issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

*State v. T.D.J.*, 7th Dist. Mahoning No. 16 MA 0104, 2018-Ohio-2766, ¶ 46-48.

{¶18} "'(C)ircumstantial evidence and direct evidence inherently possess the same probative value.'" *State v. Biros*, 78 Ohio St.3d 426, 447, 678 N.E.2d 891 (1997), quoting *Jenks, supra*, paragraph one of the syllabus.

{¶19} For the reasons addressed below, we determine the judgment is not against the manifest weight of the evidence and further conclude it is supported by sufficient evidence.

{¶20} Appellant takes issue with the guilty finding on all three counts.

{¶21} Count one, aggravated possession of drugs, a felony of the fifth degree, in violation of R.C. 2925.11, which states in part:

(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.

* * *

(C) Whoever violates division (A) of this section is guilty of one of the following:

(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II [methamphetamine] * * * whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:

(a) * * * [A]ggravated possession of drugs is a felony of the fifth degree[.]

R.C. 2925.11(A) and (C)(1)(a).

{¶22} Count two, possessing drug abuse instruments, a misdemeanor of the second degree, in violation of R.C. 2925.12, which states in part:

> (A) No person shall knowingly make, obtain, possess, or use any instrument, article, or thing the customary and primary purpose of which is for the administration or use of a dangerous drug, other than marihuana, when the instrument involved is a hypodermic or syringe, whether or not of crude or extemporized manufacture or assembly, and the instrument, article, or thing involved has been used by the offender to unlawfully administer or use a dangerous drug, other than marihuana, or to prepare a dangerous drug, other than marihuana, for unlawful administration or use
>
> * * *
>
> (C) Whoever violates this section is guilty of possessing drug abuse instruments, a misdemeanor of the second degree.

R.C. 2925.12(A) and (C).

{¶23} Count three, use/possession of drug paraphernalia, a misdemeanor of the fourth degree, in violation of R.C. 2925.14(C)(1), which states in part:

> (C)(1) Subject to division (D)(2) of this section, no person shall knowingly use, or possess with purpose to use, drug paraphernalia.
>
> * * *
>
> (F)(1) Whoever violates division (C)(1) of this section is guilty of illegal use or possession of drug paraphernalia, a misdemeanor of the fourth degree.

R.C. 2925.14(C)(1) and (F)(1).

{¶24} The State advanced a constructive possession instruction at trial.

Where possession is at issue, "[o]wnership does not need to be proven and circumstantial evidence can be relied upon to establish constructive possession." *State v. Floyd*, 7th Dist. Mahoning No. 18 MA 0106, 2019-Ohio-4878, ¶ 16, citing *State v. Sykes*, 7th Dist. Mahoning No. 16 MA 0162, 2018-Ohio-983, ¶ 17, citing *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). As we recently noted, an object can be individually or jointly possessed. *State v. Bunn*, 7th Dist. Mahoning No. 20 MA 0094, 2021-Ohio-2413, ¶ 33. Further, an individual may actually or constructively possess an object. *Id.*

*State v. Butcher*, 7th Dist. Columbiana No. 21 CO 0013, 2022-Ohio-928, ¶ 20.

{¶25} R.C. 2941.03 states in part: "An indictment or information is sufficient if it can be understood therefrom: * * * (E) That the offense was committed at some time prior to the time of finding of the indictment or filing of the information."

{¶26} "Precise times and dates are ordinarily not essential elements of offenses." *State v. Lewis*, 7th Dist. Belmont No. 99-BA-51, 2001 WL 536985, *3 (May 16, 2001), citing *State v. Sellards* (1985), 17 Ohio St.3d 169, 170-171.

{¶27} Appellant stresses there is no proof that he committed any of the foregoing offenses on or about December 30, 2020 as alleged in the indictment. We disagree as the record establishes that the State did prove that the offenses did, in fact, occur on or about December 30, 2020.

{¶28} As stated, Tolzda testified that her daughter, Kahrig, resided at a home Tolzda owns. In 2020, Tolzda had concerns about Kahrig's drug use and noticed unusual behavior. Tolzda first contacted WPD in the beginning of December 2020. Tolzda spoke with Chief Jones about Kahrig's issues. Around the first or second week of December 2020, Tolzda became aware that Appellant was residing with Kahrig. Tolzda did not want anyone living in the home besides her daughter and grandchildren.

{¶29} On one occasion in December 2020, Tolzda went to the home and her 13-year-old granddaughter answered the door. Tolzda observed Kahrig and Appellant "very scantily dressed" and "under the influence of something." (7/19/2021 Jury Trial Tr., p. 186). Tolzda also smelled marijuana in the vicinity of Appellant.

**{¶30}** Tolzda contacted WPD a second time after learning from her granddaughter that Kahrig and Appellant were involved with drugs. Tolzda's granddaughter sent her photos from the couple's bedroom of "a variety of drug paraphernalia, and hypodermic needles." (*Id.* at p. 188; State's Exhibits 1, 2, and 3). Tolzda sent the photos to Chief Jones.

**{¶31}** Chief Jones testified that he first became involved in this matter at the beginning of December 2020. On December 30, 2020, Tolzda made a formal report to Chief Jones identifying the man as Appellant. Chief Jones reviewed the photographs provided by Tolzda and obtained a search warrant. During the search on December 30, 2020, Chief Jones observed Kahrig and Appellant standing outside of their second floor bedroom. As some indication that Appellant was living there, Chief Jones observed men's clothes and Appellant's dog, "Hurricane." (7/19/2021 Jury Trial Tr., p. 217). In the bedroom, Chief Jones "located several items that were exactly consistent with the photos that [he] was provided with from [Tolzda]" including "drug abuse instruments, drug paraphernalia, and [he] also located a substance that was a white crystalline substance that was suspected to be Methamphetamine at the time." (*Id.* at p. 218).

**{¶32}** Numerous photographs were taken at the scene. (State's Exhibits 4-13). The items removed from the home included: 24 hypodermic syringes; an aluminum pop can bottom; a black digital scale; two blue tie-offs; a clear vial; multiple baggies; seven syringes in a white sock; miscellaneous hypodermic needles; a hypodermic syringe pipe in a blue plastic box; a can containing a white crystalline substance; miscellaneous marijuana paraphernalia; a small plastic bag containing a dark substance; a spoon with a dark, wet substance; a spoon with a white substance; a small plastic baggie containing a crystalline substance; a small white cup containing residue; a small blue glass dish containing cotton; a glass pipe; and a pill bottle containing 25 Suboxone pills. Items were sent for testing and BCI prepared a report, revealing the presence of Methamphetamine. (State's Exhibit 15). Kahrig and Appellant were advised of their Miranda rights and arrested.

**{¶33}** Swisher testified that she received information that Kahrig was allegedly "abusing drugs again, and she was residing with a known drug user [Appellant] at the

time." (7/19/2021 Jury Trial Tr., p. 257). Swisher spoke with both Kahrig and Appellant at the scene. Kahrig and Appellant admitted to Swisher that they had been using drugs.

{¶34} Kahrig testified that she is currently incarcerated in a lock down facility. Kahrig explained that Appellant had moved in with her in October 2020 and they used drugs together, including methamphetamine, Suboxone, and Subutex. Kahrig and Appellant were intimate and shared a bedroom. Kahrig indicated that most of the drug paraphernalia found in the bedroom were shared items. The methamphetamine was shared but obtained by Appellant.

{¶35} Pursuant to *Jenks, supra*, there is sufficient evidence upon which the jury could reasonably conclude beyond a reasonable doubt that the elements of aggravated possession of drugs, possessing drug abuse instruments, and use/possession of drug paraphernalia were proven. Thus, the trial court did not err in overruling Appellant's Crim.R. 29 motion.

{¶36} Also, the jury chose to believe the State's witnesses. *DeHass, supra*, at paragraph one of the syllabus. Based on the evidence presented, as previously stated, the jury did not clearly lose its way in finding Appellant guilty of aggravated possession of drugs, possessing drug abuse instruments, and use/possession of drug paraphernalia. *Thompkins, supra*, at 387.

{¶37} Appellant's first assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT TO THE 1 YEAR MAXIMUM SENTENCE ON THE FELONY.**

{¶38} In his second assignment of error, Appellant contends the trial court erred in sentencing Appellant to the maximum.

{¶39} This court utilizes R.C. 2953.08(G) as the standard of review in all felony sentencing appeals. *State v. Michaels*, 7th Dist. Mahoning No. 17 MA 0122, 2019-Ohio-497, ¶ 2, citing *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1.

{¶40} R.C. 2953.08(G) states in pertinent part:

Case No. 21 MO 0004

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

R.C. 2953.08(G)(2)(a)-(b).

{¶41} Although trial courts have full discretion to impose any term of imprisonment within the statutory range, they must consider the sentencing purposes in R.C. 2929.11 and the guidelines contained in R.C. 2929.12.

{¶42} R.C. 2929.11(A) provides that the overriding purposes of felony sentencing are (1) "to protect the public from future crime by the offender and others"; and (2) "to punish the offender * * * using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶43} R.C. 2929.12 provides a nonexhaustive list of sentencing factors the trial court must consider when determining the seriousness of the offense and the likelihood

that the offender will commit future offenses. The court that imposes a felony sentence "has discretion to determine the most effective way to comply with the purposes and principles of sentencing." R.C. 2929.12(A). The factors a trial court may consider include the "more serious" factors, such as "[t]he physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim" and "[t]he victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense." R.C. 2929.12(B)(1) and (2). The court may also consider the "less serious" factors, any recidivism factors, and any mitigating factors listed in R.C. 2929.12(C)-(F).

> R.C. 2929.11 does not require the trial court to make any specific findings as to the purposes and principles of sentencing. *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31. Similarly, R.C. 2929.12 does not require the trial court to "use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

*State v. Shaw*, 7th Dist. Belmont No. 15 BE 0065, 2017-Ohio-1259, ¶ 36; *see also State v. Morant*, 7th Dist. Belmont No. 20 BE 0020, 2021-Ohio-3160, ¶ 56 ("'[N]either R.C. 2929.11 nor R.C. 2929.12 requires a trial court to make any specific factual findings on the record[.]'")

{¶44} "'The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences.' *State v. King,* 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.)." *State v. Burkhart*, 7th Dist. Belmont No. 18 BE 0020, 2019-Ohio-2711, ¶ 16.

{¶45} In addition to Appellant's allegation that the trial court erred in sentencing him to the 12-month maximum for the fifth-degree felony offense, he also contends the court should not have considered his criminal record before imposing the sentence.

> It is well established that sentencing courts may consider arrests and even prior allegations that did not result in conviction before imposing

sentence. *State v. Hutton,* 53 Ohio St.3d 36, 43, 559 N.E.2d 432 (1990). A sentencing court may take into consideration the circumstances of the offense for which the defendant has been indicted, even if [a] negotiated plea is at odds with the indicted elements. *State v. Starkey,* 7th Dist. No. 06 MA 110, 2007-Ohio-6702, ¶ 17. In sentencing, the court can review the indictment, bill of particulars, victim's statements in court, trial testimony if a trial was held, and any presentence investigation report. * * *

* * * Moreover, "(c)ourts have consistently held that evidence of other crimes, including crimes that never result in criminal charges being pursued, or criminal charges that are dismissed as a result of a plea bargain, may be considered at sentencing." *Starkey* at ¶ 17.

*State v. Martin*, 7th Dist. Mahoning No. 16 MA 0160, 2018-Ohio-862, ¶7-8.

{¶46} In this case, the trial judge heard from defense counsel and Appellant at the sentencing hearing. The judge spoke with Appellant on the record about his criminal history (including a fourth-degree felony conviction), told him that he's "playing with fire" and that if he does not quit [doing drugs], he's "going to end up dead." (7/26/2021 Sentencing Hearing Tr., p. 364).

{¶47} Regarding the fifth-degree felony offense, the judge stated:

The reason for the twelve-month sentence [for the F-5] is actually two-fold. One, you have a history, you need to be punished. You need to understand the consequences of your actions.

And two, I don't really know if you'll make it on community control, so, I'm just having you serve it all out and once you serve your local time and get to EOCC and get that treatment, and you're done there, assuming that you complete it, you will have no supervision from this Court.

(*Id.* at p. 366.)

{¶48} The record in this case reflects the trial court considered R.C. 2929.11, 2929.12, 2929.13, 2929.14, 2929.15, and the PSI. (7/26/2021 Sentencing Entry, p. 1-2).

Appellant was sentenced to a maximum term of 12 months for aggravated possession of drugs, a felony of the fifth degree, in violation of R.C. 2925.11(A) and (C)(1)(a). Thus, Appellant's sentence is within the statutory range for the fifth-degree felony offense. R.C. 2929.14(A)(5) ("For a felony of the fifth degree, the prison term shall be a definite term of six, seven, eight, nine, ten, eleven, or twelve months.")

{¶49} Accordingly, because the trial court had full discretion to impose any sentence within the authorized statutory range, and Appellant's 12-month maximum term is within the authorized statutory range for a fifth-degree felony, his sentence is not contrary to law. *See Burkhart, supra,* at ¶ 16.

{¶50} Appellant's second assignment of error is without merit.

## **CONCLUSION**

{¶51} For the foregoing reasons, Appellant's assignments of error are not well-taken. The July 26, 2021 judgment of the Monroe County Court of Common Pleas convicting Appellant for aggravated possession of drugs, possessing drug abuse instruments, and use/possession of drug paraphernalia following a trial by jury and sentencing him to a total of 12 months is affirmed.

Donofrio, P.J., concurs.

Robb, J., concurs.

Case No. 21 MO 0004

[Cite as *State v. Wilcox*, 2022-Ohio-3293.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**