IN RE DISQUALIFICATION OF FLEEGLE.

STATE *v*. LYNUM

AND

STATE *v*. GILLARD.

[Cite as *In re Disqualification of Fleegle*, ___ Ohio St.3d ___,
2020-Ohio-5636.]

*Judges—Affidavit of disqualification—R.C. 2701.03—If a judge cannot prove that he or she has taken steps to protect the safety of individuals in the courtroom, the judge may be disqualified, especially if the judge cannot also articulate the necessity of proceeding with jury trials during a dangerous stage of a pandemic—Affidavit granted.*

(No. 20-AP-099—Decided December 10, 2020.)

ON AFFIDAVIT OF DISQUALIFICATION in Muskingum County Court of Common Pleas, General Division, Case Nos. CR2020-0552 and CR2020-0250.

_____

**O'CONNOR, C.J.**

{¶ 1} Harry R. Reinhart, counsel for the defendants, has filed an affidavit and a supplemental affidavit pursuant to R.C. 2701.03 seeking to disqualify Judge Mark Fleegle from the above-referenced cases. Both matters are scheduled for jury trials in December 2020.

{¶ 2} Mr. Reinhart alleges that Judge Fleegle has failed to implement precautions to protect against the spread of the coronavirus in his courtroom. For example, Mr. Reinhart alleges that Judge Fleegle conducts all hearings in person rather than by remote technology and that he does not mandate facial coverings. Mr. Reinhart previously objected to the judge's procedures, arguing that they risk trial participants' health, violate the governor's statewide mask order, and ignore

recommendations from the chief justice. According to Mr. Reinhart, Judge Fleegle dismissed the objection by stating that the recommendations were not mandatory and that his large courtroom allowed for social distancing. Given the recent increase in COVID-19 cases in Ohio and Muskingum County, Mr. Reinhart believes that contagious individuals will attend the December trials and that the "risk of infection is unreasonable." Mr. Reinhart further states that because of his age, if he contracts the virus, he is at higher risk for serious complications and that his clients are worried that during trial, he may become distracted with his own health concerns.

{¶ 3} In response, Judge Fleegle states that many of the courtroom-safety measures mentioned in Mr. Reinhart's affidavit are "recommendations, not rules or orders." The judge believes that he and the jurors are essential employees and that trials and hearings "must continue to proceed in order to keep our system of government intact." Nevertheless, the judge states that because of the recent increase in COVID-19 cases, he now requires that individuals wear face masks. Judge Fleegle was asked to supplement his response with the details of his COVID-19 protocol for the scheduled trials. The judge responded that he had no written policy but that he had recently made the following changes: all persons in his courtroom will wear masks, except he will remove his mask when seated on the bench, witnesses will remove their masks when they testify, and attorneys may lower their masks to speak and be understood; social distancing will be followed; the courthouse staff will continue to screen and check the temperature of individuals entering the courthouse; and anyone uncomfortable with the requirements will be permitted to leave, including potential jurors.

{¶ 4} Mr. Reinhart's allegations are similar to those in *In re Disqualification of Croce*, 160 Ohio St.3d 1240, 2020-Ohio-4051, 155 N.E.3d 960, in which two defense attorneys sought to disqualify a judge who had intended to resume a capital jury trial suspended as a result of the COVID-19 pandemic. The

attorneys alleged that the judge had demonstrated bias and a disregard for the welfare of the defendant and his attorneys by, among other things, failing to implement all of the public-health protections identified in an order issued by the court's administrative judge. The judge in *Croce*, however, had implemented *some* precautions recommended by public-health officials. *Id.* at ¶ 10. The record included two orders identifying the measures that the judge had adopted to safely resume the trial, including installing germ shields and barriers in areas of the courtroom where physical distancing was impractical, such as in the jury box and around the witness stand; requiring all individuals entering the courthouse to undergo temperature checks and wear facial coverings; providing clear face shields to witnesses when they testify, if requested; rearranging the jury assembly room to permit physical distancing and allowing jurors access to other jury rooms during breaks; disinfecting the courtroom daily and during lunch breaks; limiting the number of people in the courtroom by live-streaming the trial and designating a separate room where the public could view the live-stream; authorizing the defendant and his attorneys to meet inside the courthouse each day rather than in the jail; and conducting sidebars in chambers or in the jury room. Based on that record, the affidavit was denied. The decision noted that reasonable people may disagree about when the trial could safely resume and about the sufficiency of the health and safety protocol implemented by the judge, but it could not be said that "she ha[d] 'disregarded' affiants' and the defendant's welfare to the extent that it [wa]s necessary to disqualify her from an ongoing trial." *Id.* at ¶ 11.

{¶ 5} The same cannot be said in this case. *Croce* was decided in June 2020. It is now December 2020, and we are approaching what could be the height of the COVID-19 pandemic. The daily numbers of confirmed COVID-19 cases, hospitalizations, and deaths have significantly increased. The entire state is under curfew, and Muskingum County is under a Level 3 (red) public emergency, which means that there is "very high exposure and spread" of the coronavirus in the county

and that residents should "limit activities as much as possible" and "follow all current health orders."[1]  In light of the spiking COVID-19 cases, this court has issued guidance regarding how courts should responsibly maintain access to justice and has assisted trial courts with implementing remote technology and other costs associated with the pandemic.[2]  Some Ohio courts have temporarily suspended jury trials until January 2021,[3] and some states have issued statewide jury-trial restrictions.[4]

{¶ 6} Yet Judge Fleegle intends to hold two jury trials this month with no written COVID-19 protocol—that is, no written procedures to protect the safety of trial participants and jurors during a health emergency.  Without written procedures, no one will know what is expected of them upon entering Judge Fleegle's courtroom.  Indeed, Mr. Reinhart avers that if Judge Fleegle recently decided to require face masks, he failed to communicate that change to the practicing bar.  Further, unwritten (and unknown) policies cannot be effectively enforced.  In *Croce*, the judge not only consulted with the public-health department regarding

---

1. *See* https://coronavirus.ohio.gov/wps/portal/gov/covid-19/resources/general-resources/stay-at-home-tonight-fact-sheet) (accessed Dec. 10, 2020) [https://perma.cc/D59N-RNKR]; https://coronavirus.ohio.gov/wps/portal/gov/covid-19/public-health-advisory-system (accessed Dec. 10, 2020) [https://perma.cc/82ZZ-M4SF].

2. *See* https://www.supremecourt.ohio.gov/coronavirus/default.aspx (accessed Dec. 10, 2020) [https://perma.cc/AHQ8-H9K9].

3. *See, e.g.*, https://www.supremecourt.ohio.gov/coronavirus/courts/Franklin/CPGen_111720.pdf (accessed Dec. 10, 2020) [https://perma.cc/8WHC-R5H7]; https://www.supremecourt.ohio.gov/coronavirus/courts/Cuyahoga/CPGen_112320.pdf (accessed Dec. 10, 2020) [https://perma.cc/32BX-UQY2]; https://www.supremecourt.ohio.gov/coronavirus/courts/Lorain/CPGen_111820.pdf (accessed Dec. 10, 2020) [https://perma.cc/RX7F-CGKE]; https://www.supremecourt.ohio.gov/coronavirus/courts/Logan/BellefontaineMuni_110320.pdf (accessed Dec. 10, 2020) [https://perma.cc/4TJ5-CY2N]; https://www.supremecourt.ohio.gov/coronavirus/courts/Summit/CPGeneral_110620.pdf (accessed Dec. 10, 2020) [https://perma.cc/UM42-388Q].

4. *See* https://www.ncsc.org/newsroom/public-health-emergency (accessed Dec. 10, 2020).

measures to prevent the spread of the virus in her courtroom, she discussed the protocol with the attorneys at a hearing and issued written orders detailing the protocol. In contrast, Judge Fleegle states—in response to the affidavit of disqualification, not in a written protocol—that he will enforce "social distancing." But he failed to specify how he intends to minimize contact between jurors and to keep counsel, the defendant, and the public six feet apart. Nor did Judge Fleegle identify any plan for sanitizing his courtroom. Even if Judge Fleegle is convinced that he can preside over a safe jury trial without any sort of written protocol, he should recognize that other people take public-health recommendations very seriously and that the health concerns of attorneys and parties should be an important factor in deciding whether to proceed with jury trials during this phase of the pandemic.

{¶ 7} In addition, Judge Fleegle has failed to sufficiently explain the urgency of going forward with the two jury trials at this particular time. Judge Fleegle states that because the legislature did not extend its tolling of speedy-trial rights beyond the end of July 2020, "[w]e already have a number of inmates whose time is running out and believe they will be released if we cannot have trials in a timely fashion." But the defendant in one of the underlying cases filed a waiver of his speedy-trial rights. *See* docket of *State v. Gillard*, Muskingum County case No. CR2020-0250. And as all Ohio judges have been advised,[5] trial judges have the authority to continue trials for defendants on a case-by-case basis without violating speedy-trial requirements. The Ohio Attorney General has opined that courts may suspend jury trials to prevent the spread of the coronavirus and they may do so consistent with state and federal speedy-trial obligations. 2020 Ohio Atty.Gen.Ops. No. 2020-002. Specifically, R.C. 2945.72(H) provides that speedy-trial time may be extended by "the period of any reasonable continuance granted other than upon

_____

5. https://www.supremecourt.ohio.gov/coronavirus/resources/ChiefCommunications/SpeedyTrial Requirements_102820.pdf (accessed Dec. 10, 2020) [https://perma.cc/2KQY-2EKK].

the accused's own motion"; continuing a trial because of a pandemic state of emergency is "reasonable."

{¶ 8} During this public-health emergency, a judge's priority must be the health and safety of court employees, trial participants, jurors, and members of the public entering the courthouse. Attorneys and the public have a right to know what steps a court is taking to keep them safe while the court continues conducting essential business. If attorneys or litigants believe that judges are not taking seriously recommendations from this court, the governor, or other public-health officials, and that as a result the health of trial participants, jurors, or the public is at risk, the judge's disqualification may be sought. If a judge cannot prove that he or she has taken steps to protect the safety of individuals in the courtroom, the judge may be disqualified, especially if the judge cannot also articulate the necessity of proceeding with jury trials during this dangerous stage of the pandemic. The consistent guidance from the Ohio Supreme Court has been to utilize technology to conduct the business of the court. Judges in the courts of Ohio have successfully employed technology as sophisticated as Zoom and as basic as a conference call to ensure the safety of litigants, attorneys, staff, and members of the public. There is no mention in Judge Fleegle's response that the court has employed technology to reduce the flow of people through the courthouse. The guidance from this court has recognized that even during this pandemic there may be the need to schedule an in-person hearing for matters such as a civil protection order, etc. If, in what should be rare occasions, in-person hearings or trials cannot be avoided, judges must ensure that scrupulous safety practices are followed, and they must effectively communicate those practices to all participants. By failing to follow the Ohio Department of Health and Governor DeWine's directives, a judge endangers the health of those who enter the courthouse and their families, etc. A judge's noncompliance whittles away at the public's trust and confidence in the judiciary.

{¶ 9} The affidavit of disqualification is granted. Judge Fleegle is disqualified from the two underlying cases. The assignment of a new judge to preside over the cases will be addressed in a separate entry.

_____