[Cite as *State v. Feagin*, 2022-Ohio-3641.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| ULYSSES FEAGIN | : | Case No. 2021-CA-0084 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Case No. 2020-CR-0467


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      October 12, 2022


APPEARANCES:

For Plaintiff-Appellee

JAMES L. BLUNT, II
3954 Industrial Parkway
Shelby, OH  44875

For Defendant-Appellant

JODIE SCHUMACHER
38 South Park Suite
Second Floor
Mansfield, OH  44902

*Wise, Earle, P.J.*

{¶ 1} Defendant-Appellant Ulysses Feagin appeals the November 17, 2021 judgment of conviction and sentence of the Richland County Court of Common Pleas. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2} This matter involves two separate incidents. The first took place on January 17, 2020 when appellant crashed his vehicle into another vehicle, went across the double yellow line and rolled his vehicle over. Officers responding to the scene found appellant was intoxicated, slurring his words, belligerent, and uncooperative. Appellant refused to give his name and resisted going to the hospital for apparent injuries. Appellant was therefore arrested and transported to the hospital. In a search incident to arrest, marijuana and cocaine were found on appellant's person. At the hospital, nursing staff found additional cocaine on appellant's person. Due to his erratic and uncooperative behavior, medical staff needed to sedate appellant in order to assess and treat his injuries. Appellant was released from police custody the same day.

{¶ 3} The second incident took place on July 6, 2020. On that date, appellant and Amanda Craft were cruising around in a black Lincoln SUV drinking liquor and smoking marijuana. Appellant was driving and Craft was in the passenger seat. As they drove on King Street, Officer Mark Boggs of the Mansfield Police Department was traveling in the opposite direction on his way to the jail with a prisoner in the back seat of his cruiser. As the two vehicles approached each other, appellant drove so far left of center that Boggs had to drive into a ditch to avoid being struck head-on. Boggs tuned around, pursued appellant, and requested assistance from other officers in the area.

{¶ 4} Two additional Mansfield Police Officers responded. Officer Jordan Moore pulled appellant over and officers Mark Boggs and Clay Blair arrived immediately after. Both Boggs' and Moore's cruisers were equipped with dashcams. When officers approached appellant's vehicle he rolled up the windows and locked the doors. Officers gave appellant orders to unlock and open the door. Instead of complying, appellant turned his body all the way toward Craft and appeared to be reaching to the right. Eventually either appellant or Craft unlocked the doors and appellant was extracted from the vehicle. Upon his removal from the vehicle, two rounds of ammunition fell from his lap. There were additional rounds of ammunition on the driver's side floorboard.

{¶ 5} Officers searched the Lincoln and discovered two .22 caliber handguns on the passenger side floorboard. Appellant was prohibited form possessing a handgun due to a 2018 conviction for possession of cocaine. In the back seat of the vehicle officers found a backpack. Appellant's hospital discharge papers from the January 17 accident were in the backpack. The backpack additionally contained 6.94. grams of cocaine, 20 tablets (5.07 grams) of alprazolam (Xanax)141 tablets of trazodone (Desyrel), 2 tablets (2.3 grams) of clonazepam (Klonopin) 1 tablet (.50 grams) of oxycodone, 1.3 grams (2 tablets) of penicillin, 5 tablets (.5 grams) of oxycodone (Roxicodone), 1 tablet (.49 grams) of oxycodone (Percocet), 13.44 grams of heroin, 152 tablets of diazepam (Valium), and 210 tablets (96.6 grams) of tramadol (Ultracet).

{¶ 6} Appellant was arrested on July 7, 2020. On September 3, 2020, the Richland County Grand Jury returned an indictment charging appellant as follows:

{¶ 7} Count one, trafficking in heroin in violation of R.C. 2925.03(A)(2), 2925.03(C)(6)(e), a felony of the second degree.

{¶ 8}   County two, possession of heroin in violation of R.C. 2925.11(A), 2925.11(C)(6)(d), a felony of the second degree.

{¶ 9}   Count three, trafficking in cocaine in violation of R.C. 2925.03(A)(2) 2925.03(C)(4)(c), a felony of the fourth degree.

{¶ 10} Count four, possession of cocaine in violation of R.C. 2925.11(A), 2925.11(C)(4)(b), a felony of the fourth degree.

{¶ 11} Count five, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), 2925.03(C)(1)(a), a felony of the fourth degree.

{¶ 12} Count six, aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), 2925.03(C)(1)(a), a felony of the fourth degree.

{¶ 13}  Count seven, aggravated possession of drugs in violation of R.C. 2925.11(A), 2925.11(C)(1)(a), a felony of the fifth degree.

{¶ 14} Count eight, aggravated possession of drugs in violation of R.C. 2925.11(A), 2925.11(C)(1)(a), a felony of the fifth degree.

{¶ 15} Count nine, trafficking in drugs in violation of R.C. 2925.03(A)(2), 2925.03(C)(2)(a), a felony of the fifth degree.

{¶ 16} Count ten, trafficking in drugs in violation of R.C. 2925.03(A)(2), 2925.03(C)(2)(a), a felony of the fifth degree.

{¶ 17} Count eleven, trafficking in drugs in violation of R.C. 2925.03(A)(2), 2925.03(C)(2)(a), a felony of the fifth degree.

{¶ 18} Count twelve, trafficking in drugs in violation of R.C. 2925.03(A)(2), 2925.03(C)(2)(a), a felony of the fifth degree.

{¶ 19} Count thirteen, possession of drugs in violation of R.C. 2925.11(A), 2925.11(C)(2)(a), a felony of the fifth degree.

{¶ 20} Count fourteen, possession of drugs in violation of R.C. 2925.11(A), 2925.11(C)(2)(a), a felony of the fifth degree.

{¶ 21} Count fifteen, possession of drugs in violation of R.C. 2925.11(A), 2925.11(C)(2)(a), a felony of the fifth degree.

{¶ 22} Count sixteen, possession of drugs in violation of R.C. 2925.11(A), 2925.11(C)(2)(a), a felony of the fifth degree.

{¶ 23} Count seventeen, having weapons under disability in violation of R.C. 2923.13(A)(3), 2923.13(B), a felony of the third degree.

{¶ 24} Count eighteen, having weapons under disability in violation of R.C. 2923.13(A)(3), 2923.13(B), a felony of the third degree.

{¶ 25} Count nineteen, improperly handing firearms in a motor vehicle in violation of R.C. 2923.16(B), 2923.16(I), a felony of the fourth degree.

{¶ 26} Count twenty, improperly handing firearms in a motor vehicle in violation of R.C. 2923.16(B), 2923.16(I), a felony of the fourth degree.

{¶ 27} Count twenty-one, carrying a concealed weapon in violation of R.C. 2023.12(A)(2), 2923.12(F)(1), a felony of the fourth degree.

{¶ 28} Count twenty-two, carrying a concealed weapon in violation of R.C. 2023.12(A)(2), 2923.12(F)(1), a felony of the fourth degree.

{¶ 29} Counts one through sixteen each carried two one-year firearm specifications pursuant to R.C. 2941.141(A) and two specifications for forfeiture of a gun

in a drug case pursuant to R.C. 2941.1417(A). Counts seventeen through twenty-two each carried two specifications for forfeiture of a weapon pursuant to R.C. 2941.1417(A).

{¶ 30} Appellant pled not guilty to the charges and a jury trial was set for December 1, 2020. Although represented by counsel, appellant filed a plethora of pro se motions including motions to remove counsel and to disqualify the judge assigned to the case. Counsel for appellant also filed a motion to determine appellant's competency.

{¶ 31} Trial was eventually held on September 20, 2021, at the conclusion of which appellant was found guilty as charged. Appellant was subsequently sentenced to an aggregate prison term of 8 to 12 years and an additional 2 years for the firearm specifications.

{¶ 32} Appellant timely filed an appeal and the matter is now before this court for consideration. He raises five assignments of error for our consideration as follow:

I

{¶ 33} "ISSUE: WHETHER THE TRIAL COURT ERRED BY FAILING TO DISMISS THE CASE FOR NOT AFFORDING THE DEFENDANT A TRIAL WITHIN THE STATUTORY TIME LIMIT, PURSUANT TO ORC 2945.71"

II

{¶ 34} "WHETHER THE TRIAL COURT ERRED BY EXCLUDING THE POLICE BODY CAMERA OF THE POLICE OFFICER WHO RESIGNED DUE TO DISCIPLINARY REASONS TO BE SEEN AND HEARD BY THE JURY."

III

{¶ 35} "WHETHER THE TRIAL COURT ERRED BY FINDING THE CHAIN OF CUSTODY OF THE EVIDENCE DID NOT AFFECT THE INTEGRITY OF THE EVIDENCE."

IV

{¶ 36} "ISSUE: INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO SUBPOENA THE POLICE OFFICER WHO RESIGNED DUE TO DISCIPLINARY REASONS PRIOR TO TRIAL."

V

{¶ 37} "ISSUE: INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO CALL THE OWNER OF THE VEHICLE AS A WITNESS.

I

{¶ 38} In his first assignment of error, appellant baldly argues the state failed to bring him to trial within the statutory time limit. He provides no speedy trial calculation and does not acknowledge the many tolling events that took place before trial. App.R. 16(A)(7) requires an appellant to include in his brief "* * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."

{¶ 39} "If an argument exists that can support [an] assignment of error, it is not this court's duty to root it out." *Thomas v. Harmon*, 4th Dist. Lawrence No. 08CA17, 2009-Ohio-3299, at ¶14, quoting *State v. Carman*, 8th Dist. Cuyahoga No. 90512, 2008-Ohio-

4368, at ¶31. "It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." *Catanzarite v. Boswell*, 9th Dist. Summit No. 24184, 2009-Ohio-1211, at ¶16, quoting *Kremer v. Cox*, 114 Ohio App.3d 41, 60, 682 N.E.2d 1006 (9th Dist. 1996). Therefore, "[w]e may disregard any assignment of error that fails to present any citations to case law or statutes in support of its assertions." *Frye v. Holzer Clinic, Inc.,* 4th Gallia No. 07CA4, 2008-Ohio-2194, at ¶12. See, also, App.R. 16(A)(7); App.R. 12(A)(2); *Tally v. Patrick*, 11th Dist. Trumbull No. 2008-T-0072, 2009-Ohio-1831, at ¶21-22; *Jarvis v. Stone*, 9th Dist. Summit No. 23904, 2008-Ohio-3313, at ¶23; State v. Norman, 5th Guernsey No. 2010-CA-22, 2011-Ohio-596, ¶29; *State v. Untied*, 5th Dist. Muskingum No. CT20060005, 2007 WL 1122731, ¶141.

{¶ 40} An appellate court may rely upon App.R. 12(A) in overruling or disregarding an assignment of error because of "the lack of briefing" on the assignment of error. *Hawley v. Ritley*, 35 Ohio St.3d 157, 159, 519 N.E.2d 390, 392-393 (1988); *Abon, Ltd. v. Transcontinental Ins. Co.*, 5th Dist. Richland No. 2004-CA-0029, 2005 WL 1414486, ¶100; *State v. Miller*, 5th Dist. Ashland No. 04-COA-003, 2004-Ohio-4636, ¶41. "Errors not treated in the brief will be regarded as having been abandoned by the party who gave them birth." *Uncapher v. Baltimore & Ohio Rd. Co.*, 127 Ohio St. 351, 356, 188 N.E. 553, 555 (1933).

{¶ 41} Despite appellant's lack of proper briefing, in the interest of justice, we will consider this assignment of error.

{¶ 42} Speedy-trial provisions are mandatory and are encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a

person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. *State v. Ladd*, 56 Ohio St.2d 197, 200, 383 N.E.2d 579 (1978). "The statutory speedy trial provisions, R.C. 2945.71 et seq., constitute a rational effort to enforce the constitutional right to a public speedy trial of an accused charged with the commission of a felony or a misdemeanor and shall be strictly enforced by the courts of this state." *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589, syllabus (1980).

{¶ 43} A speedy-trial claim involves a mixed question of law and fact. *State v. Hickinbotham*, 5th Dist. Stark No. 2018CA000142, 2019-Ohio-2978, 2019 WL 4780988, ¶ 26, citing *State v. Jenkins*, 5th Dist. Stark No. 2009-CA-00150, 2010-Ohio-2719, ¶ 31, citing *State v. Larkin*, 5th Dist. Richland No. 2004-CA-103, 2005-Ohio-3122. As an appellate court, we must accept as true any facts found by the trial court and supported by competent, credible evidence. *Id.* With regard to the legal issues, however, we apply a de novo standard of review and thus freely review the trial court's application of the law to the facts. *Id.*

{¶ 44} R.C. 2945.71(C)(2) requires "[a] person against whom a charge of felony is pending * * * be brought to trial within two hundred seventy days after his arrest." R.C. 2945.71(E) provides "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." In *State v. McDonald*, 48 Ohio St.2d 66 (1976), the Ohio Supreme Court held the triple count provision applies "only to those defendants held in jail in lieu of bail solely on the pending charge." *Id.* at syllabus.

{¶ 45} The statutory speedy-trial period begins to run on the date the defendant is arrested, although the date of arrest is not counted when calculating speedy-trial time. *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶44, citing *State v.*

*Tatum*, 3d Dist. Seneca No. 13-10-18, 2011-Ohio-3005. Once the statutory time limit has expired, the defendant has established a prima facie case for dismissal. *State v. Butcher*, 27 Ohio St.3d 28, 30-31, 500 N.E.2d 1368 (1986). The burden then shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55-56, 661 N.E.2d 706 (1996). If the state has violated a defendant's right to a speedy trial, then the court must dismiss the charges against the defendant. R.C. 2945.72(B).

{¶ 46} Speedy trial time is tolled by those events listed in R.C. 2945.72. These events include "[a]ny period of delay necessitated by reason of a * * * motion * * * made or instituted by the accused," under R.C. 2945.72(E), or during "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion," under R.C. 2945.72(H).

{¶ 47} Under the "triple-count provision" contained in R.C. 2945.71(E), each day a defendant spends in jail in lieu of bail counts as three days in the speedy trial time calculation. In *State v. McDonald*, 48 Ohio St.2d 66 (1976), however, the Ohio Supreme Court held the triple count provision applies "only to those defendants held in jail in lieu of bail solely on the pending charge." *Id.* at syllabus.

{¶ 48} Relevant to the time line in this matter, "[t]he Ohio Attorney General has opined that courts may suspend jury trials to prevent the spread of the corona virus and they may do so consistent with state and federal speedy-trial obligations." *In re Disqualification of Paris*, 161 Ohio St.3d 1285, 2020-Ohio-6875, 164 N.E.3d 509, ¶5; quoting *In re Disqualification of Fleegle*, 161 Ohio St.3d 1263, 2020-Ohio-5636, 163 N.E.3d 609, ¶7; citing 2020 Atty.Gen.Ops. No. 2020-002. In *Fleegle*, the Ohio Supreme

Court held that trial judges have the authority to continue trials on a case-by-case basis without violating speedy-trial requirements and continuing a trial because of a pandemic state emergency is reasonable under R.C.2945.72(H). *Id.*

{¶ 49} When reviewing a speedy trial question, an appellate court must count the number of delays chargeable to each appellant and appellee. Next, the appellate court must determine whether the number of days not tolled exceeded the time limits under R.C. 2945.71. *State v. Ferrell*, 8th Dist. Cuyahoga No. 93003, 2010-Ohio-2882, ¶20. When reviewing legal issues presented in a speedy trial claim, we must strictly construe the relevant statutes against the state. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706, 709 (1996); *State v. Colon*, 5th Dist. Stark No. 09-CA-232, 2010-Ohio-2326, ¶12.

{¶ 50} An examination of the record yields the following pertinent dates:

{¶ 51} Appellant was arrested on July 7, 2020. The day of arrest does not count toward speedy trial calculations. Additionally, Ohio House Bill 197 tolled all time limitations under the Revised Code from March 9, 2020 until July 30, 2020 due to the global Covid-19 pandemic. Thus, from July 7 to July 30, 2020, no speedy trial time elapsed.

{¶ 52} On July 20, 2020, appellant was sentenced to 12 months incarceration on an unrelated case and released on October 20, 2020. Because he was not being held solely on the pending charge, this period of incarceration is calculated as 1-to-1 time. *State v. MacDonald*, 48 Ohio St.2d 66, 2 O.O.3d 219, 357 N.E.2d 40 (1976). However, on October 15, 2020 appellant filed a pro se motion to reduce bond in the current matter, which is a tolling event. July 30, 2020 to October 15, 2020 = 77 days.

{¶ 53} Appellant's motion to reduce bond was denied on October 21, 2020.

{¶ 54} On October 29, 2020, the state filed a demand for discovery. Appellant never responded to the state's demand. In *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, the Supreme Court of Ohio held, "[t]he failure of a criminal defendant to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D)." *Id.* at paragraph one of the syllabus. Thus, time tolled with the state's request for discovery for a reasonable time, generally held to be 30 days. *State v. Crawford*, 6th Dist. Lucas No. l-17-1297, 2019-Ohio-2660, ¶30. October 21 through October 29, 2020 = 9 days at 3 to 1. 9x3 = 27 days. 77 + 27 = 104 days.

{¶ 55} On November 12, 2020, however, appellant filed a motion to withdraw court appointed counsel and appoint new counsel. The motion was denied on November 30, 2020. On November 25, appellant filed a motion for continuance of the December 1, 2020 trial. The same day, appellant filed a motion for a bill of particulars. Trial was continued until January 26, 2021. The judgment entry continuing trial noted time was tolled, thus Appellant's motion to continue tolled time from November 25, 2020 to January 26, 2021. See *State v. Austin*, 5th Dist. Fairfield Nos. 18-CA-18, 18-CA-31, 2019-Ohio-686. While these are all tolling events, time was previously tolled on October 29, 2020 by appellant's failure to respond to the state's demand for discovery.

{¶ 56} On January 13, 2021, appellant filed a motion to continue the January 26, 2021 trial. On January 22, 2021, the state filed a joint motion to continue the trial. On January 21, 2021, the trial court granted the motion, continuing trial until March 2, 2021 and continuing to toll time as noted in its judgment entry.

{¶ 57} On March 1, 2021, appellant again filed a motion to continue trial. The trial court granted the motion on March 8, 2021, set trial for April 6, 2021, and continued to toll time.

{¶ 58} On March 24, 2021, appellant filed a pro se complaint with the Supreme Court of Ohio to disqualify Judge Naumoff which stayed proceedings.

{¶ 59} On April 2, 2021, counsel for appellant filed a motion for a not guilty by reason of insanity (NGRI) evaluation of appellant which tolled time.

{¶ 60} On April 1, 2021, the Supreme Court of Ohio denied appellant's motion for disqualification.

{¶ 61} On April 6, 2021, the trial court reopened the matter to proceed as scheduled before Judge Naumoff. On April 7, 2021, due to the still pending NGRI evaluation, the trial court continued the trial date to June 1, 2021. However, appellant was not found competent to stand trial until August 11, 2021 thereby tolling time from April 7 through August 11, 2021.

{¶ 62} Appellant's trial began on September 23, 2021. August 11 through September 23, 2021 = 43 days. 43 days at 3 to 1 = 129 days.

{¶ 63} 104 + 129 = 233 days.

{¶ 64} Appellant was brought to trial within 270 days. His first assignment of error is overruled.

II

{¶ 65} Appellant's second assignment of error is a one-paragraph conclusory statement, again not in compliance with the appellate rules. In it, appellant states the trial court erred in excluding the body camera footage of Officer Moore, who between

appellant's arrest and trial had resigned from the Mansfield Police Department following disciplinary action. We disagree.

{¶ 66} Appellant references one transcript page in regard to his argument. That transcript page does not mention body cameras. Rather, it is a discussion between the state, counsel for appellant, and the trial court regarding Officer Moore's dash camera. We will therefore presume appellant is referring to a dash camera and not a body camera.

{¶ 67} The matter arose during the defense's case while appellant was on the stand. Counsel for appellant desired to play the video from Officer Moore's dash camera and the state objected arguing counsel would be unable to authenticate the video. The trial court permitted counsel for appellant to lay a foundation for authentication through appellant, which counsel did. The video was then shown to the jury. Transcript of trial (T.) 572-575.

{¶ 68} The trial court did not exclude the dash camera video. Appellant's second assignment of error is therefore overruled.

III

{¶ 69} In his third assignment of error, a two-paragraph conclusory statement, appellant states the trial court erred by failing to exclude evidence that was at some point in the custody of Officer Moore. Appellant appears to allege the chain of custody was broken because Moore was not called to testify at trial. We disagree.

{¶ 70} Appellant does not indicate exactly what evidence should have been excluded. He does cite pages 207 through 216 of the transcript as well as pages 523 through 525.

{¶ 71} Pages 207 through 216 contain a sidebar conversation which took place during the state's case-in-chief and while Mansfield Police Lieutenant Don Rhinehart was on the stand. Counsel for appellant asked Reinhart if Moore was subject to any disciplinary action before his resignation. The state objected and during the sidebar counsel for appellant stated he wanted to establish that Moore has a pattern of "tampering, going rouge, so to speak, as an officer." T. 209. Counsel did not argue the chain of custody was incomplete. Rather, counsel wished to imply that Moore had planted appellant's January 17, 2020 hospital visit record in the backpack located in the backseat of the Lincoln, which also contained the drugs and thus established appellant's connection to the drugs. Counsel for appellant was permitted to ask Rhinehart if Moore resigned after disciplinary action involving Moore's violations of the rules and regulations of the Mansfield Police Department. Reinhart answered affirmatively. T. 216. Nothing contained in the cited pages pertained to chain of custody issues.

{¶ 72} Pages 523 through 525 contain conversation regarding the admissibility of the state's exibits after the state had rested and before appellant began his case. Within these pages counsel for appellant does make a chain of custody argument arguing that Moore took the drugs to the crime lab for testing but did not testify. The state argued that Moore was not the only officer present when the drugs were seized from appellant's vehicle, laid out on the hood of the vehicle, photographed and weighed. In fact, three officers were present for these events. The evidence bags were sealed and initialed by Officer Mark Boggs, not Moore. T. 525-26, 242-43, 249, 253, 255-256.

{¶ 73} Appellant's arguments during this conversation appeared to be that Moore was untrustworthy and had planted or tampered with evidence in order to frame appellant.

This, however, is a credibility argument, not an admissibility argument. Insofar as a chain of custody is concerned, "the state was not required to prove a perfect, unbroken chain of custody." *State v. Keene*, 81 Ohio St.3d 646, 662, 693 N.E.2d 246 (1998). Even if the chain of custody had indeed been broken, it is well settled that this goes to the weight rather than the admissibility of the evidence. *State v. Richey*, 64 Ohio St.3d 353, 360, 595 N.E.2d 915 (1992).

{¶ 74} Appellant's third assignment of error is overruled.

IV, V

{¶ 75} Appellant's fourth and fifth assignments of error allege ineffective assistance of counsel. Specifically, appellant faults trial counsel for failing to subpoena Officer Moore and the owner of the Lincoln SUV appellant was driving on July 6, 2020. We disagree.

{¶ 76} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 104 S.Ct. 2052.

{¶ 77} Because there are countless ways to provide effective assistance in any given case, judicial scrutiny of a lawyer's performance must be highly deferential.

*Strickland*, 466 U.S. 668 at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. "Decisions on strategy and trial tactics are granted wide latitude of professional judgment, and it is not the duty of a reviewing court to analyze trial counsel's legal tactics and maneuvers." *State v. Quinones*, 8th Dist. Cuyahoga No. 100928, 2014-Ohio-5544, ¶ 18. Decisions about which witnesses to call involve matters committed to counsel's professional judgment. *State v. Williams*, 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 127 "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001).

{¶ 78} As to appellant's first challenge, he again refers to a body camera allegedly worn by Officer Moore. He argues that had counsel subpoenaed Moore, Moore's body camera video could have been introduced as evidence. There is, however, no evidence in the record that any of the officers were equipped with body-worn cameras and appellant provides no transcript reference to support his allegation that a body-worn camera video existed. As discussed under appellant's second assignment of error, Moore's dash camera video was played for the jury. T. 572-575. Because this appears to be the only available video evidence from the scene of the July 6, 2020 traffic stop, appellant's argument is without merit.

{¶ 79} Appellant's second argument faults counsel for failing to subpoena or interview the owner of the Lincoln SUV.

{¶ 80} First, appellant provides no reference to the record to support a conclusion that counsel never interviewed the owner of the Lincoln. The claim appears, therefore, to be speculation and we reject the same.

{¶ 81} Second, Appellant argues that the vehicle owner's testimony would have been helpful in determining the owner of the bookbag containing the drugs. Even if arguendo we were to find counsel should have subpoenaed the owner of the Lincoln, appellant still could not show the outcome of the trial would have been any different. While appellant theorizes the owner's testimony would have resolved conflicting testimony regarding how the vehicle came into his possession, appellant was not charged with any type of theft regarding the vehicle. In regard to the offenses he was charged with, appellant was driving the vehicle, not the owner. Amanda Craft, appellant's companion, testified appellant picked her up earlier that day driving the Lincoln. T. 357. Appellant also argues the testimony of the owner would have been beneficial in determining the owner of the bookbag. However, appellant's hospital discharge records were in the bookbag with the drugs, tying him to the drugs. T. 242-257, 380.

{¶ 82} Appellant has not demonstrated ineffective assistance of counsel. His fourth and fifth assignments of error are overruled.

{¶ 83} The judgement of the Richland County Court of Common Pleas is affirmed.

By Wise, Earle, P.J.

Hoffman, J. and

Baldwin, J. concur.

EEW/rw