[Cite as *State v. Smith*, 2023-Ohio-3135.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

PRENTICE SMITH

    Appellant

C.A. No.     30022

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CR 19 05 1705

DECISION AND JOURNAL ENTRY

Dated: September 6, 2023

HENSAL, Presiding Judge.

**{¶1}** Prentice Smith appeals his convictions for multiple rapes and kidnappings in the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

**{¶2}** A.C. testified that she was walking home on Christmas morning when a man pulled up in his car near her and offered her a ride. She accepted because it was cold. Instead of stopping at A.C.'s house, the man drove past it to the parking lot of a closed warehouse and demanded to have oral and vaginal sex with A.C. According to A.C., she complied because she did not want the man to hurt her and she could not get out because he had stopped the car with the passenger side against a wall. She memorized the license plate of the car and preserved some of the man's semen, however, after he dropped her off.

**{¶3}** Based on the evidence A.C. provided, the police identified Mr. Smith as her assailant. Mr. Smith's DNA also matched three other alleged rape victims: V.G., T.S., and M.S.

According to V.G., she was walking along a road when Mr. Smith stopped his vehicle near her and brandished a firearm at her, directing her to get in his car. He drove to a nearby vacant lot and ordered her to get in the backseat where he had vaginal sex with her. According to T.S., she was working as a prostitute when Mr. Smith picked her up and offered to pay her for sex. He drove behind a building and stopped with the passenger side against the building, then refused to pay. He overpowered T.S. until she removed her clothes and had vaginal and anal sex with him. According to M.S., she also agreed to have sex for money with Mr. Smith. He drove them under a bridge and parked against a wall. When Mr. Smith grabbed drugs that M.S. had from her, she began fighting with him. Mr. Smith prevailed, and forced M.S. to have oral, vaginal, and anal sex with him. Eventually, M.S. was able to climb out the driver's side door and escape.

{¶4} A Grand Jury indicted Mr. Smith for six counts of rape and four counts of kidnapping. The rape charges included sexually-violent-predator specifications, and the charges related to V.G. included firearm specifications. Mr. Smith's trial date was continued numerous times because of motions filed by him, the unavailability of his attorney, and courtroom availability during the COVID-19 pandemic. Mr. Smith moved to dismiss the charges multiple times on speedy trial grounds, but the trial court denied his motions. The court also denied Mr. Smith's motion to sever the charges.

{¶5} At trial, Mr. Smith admitted that he had sex with all the women but alleged that they were prostitutes and that the sex was part of their consensual business transactions. A jury found him guilty of all but one of the rape offenses, guilty of all the kidnapping offenses, and guilty of the firearm specifications. The trial court found the sexually-violent-predator specifications proven beyond a reasonable doubt and sentenced Mr. Smith to a total of 81 years to life imprisonment. Mr. Smith has appealed, assigning four errors.

II.

ASSIGNMENT OF ERROR I

PRENTICE SMITH WAS DENIED DUE PROCESS AND A SPEEDY TRIAL
UNDER THE 5TH AND 6TH AMENDMENTS TO THE U.S. CONSTITUTION,
ARTICLE 1, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION, AND R.C.
2945.71.

{¶6}    In his first assignment of error, Mr. Smith argues that the trial court denied him the

right to a speedy trial. Specifically, he argues that he was not brought to trial within 270 days as

required by Revised Code Section 2945.71, which was only 90 days for him because he was held

in jail on the charges before trial. R.C. 2945.71(C)(2), (E). "Review of a speedy-trial claim

involves a mixed question of law and fact." *State v. Long*, 163 Ohio St.3d 179, 2020-Ohio-5363,

¶ 15. "Therefore, we defer to the trial court's factual findings if they are supported by competent,

credible evidence, but we review the application of the law to those facts de novo." *Id*.

{¶7}    Although Section 2945.71 imposes deadlines for bringing a defendant to trial, the

General Assembly has recognized that some flexibility is required. Section 2945.72 "contains an

exhaustive list of events and circumstances that extend the time within which a defendant must be

brought to trial." *State v. Ramey*, 132 Ohio St.3d 309, 2012-Ohio-2904, ¶ 24. The extension at

issue in this case is under Section 2945.72(H), which provides that the time within which an

accused must be brought to trial may be extended by "[t]he period of any continuance granted on

the accused's own motion, and the period of any reasonable continuance granted other than upon

the accused's own motion."

{¶8}    Mr. Smith argues that, between the time he was arrested to the time when the Ohio

Supreme Court tolled all time limits because of the COVID-19 coronavirus pandemic, 18 of his

90 speedy trial days had run. Mr. Smith's tally includes four days between the hearing on his

motion to suppress and the Ohio Supreme Court's tolling order because the trial court announced

that it was going to deny the motion at the conclusion of the hearing. A court of record, however, "speaks only through its journal and not by oral pronouncement or mere written minute or memorandum." *Schenley v. Kauth*, 160 Ohio St. 109 (1953), paragraph one of the syllabus. The trial court did not enter its written denial of Mr. Smith's motion to suppress until three days after the Ohio Supreme Court issued its tolling order. Accordingly, only 14 of the 90 speedy trial days passed before the tolling period went into effect.

{¶9} The Ohio Supreme Court's tolling order ended on July 30, 2020, and Mr. Smith was initially scheduled for trial on August 10, 2020. On August 3, 2020, the trial court continued the trial sua sponte until September 28, 2020, explaining that the court's administrative judge had issued an order indicating that, because of continuing pandemic-related health concerns, a trial could only proceed if a defendant's case was within a week of the speedy trial deadline. On September 22, 2020, the trial court continued the trial again for a similar reason. Although the administrative judge at that point was allowing trials to proceed if the defendant was 14 days from the speedy trial deadline, Mr. Smith's case was still outside that window. Mr. Smith does not challenge the August and September continuances as being unreasonable.

{¶10} The trial court re-set Mr. Smith's trial for October 19, 2020. On October 1, 2020, however, the administrative judge issued an updated order that suspended criminal trials through November 6, 2020, unless they were specifically authorized by the administrative judge. According to the trial court, it sought but was denied authorization to hold Mr. Smith's trial on October 19, 2020, making the court unavailable that day. In its journal entry continuing the October 19, 2020 trial date, the court incorporated the administrative judge's miscellaneous orders related to the pandemic. It also incorporated an email it had received from the administrative judge, explaining that its request to hold Mr. Smith's trial was denied because "Summit County

has increased to level 3 Red, the significant increase of Covid-19 cases over the last week, the at-risk victims, out of state witness, and the current policy requiring court personnel/judges to self-quarantine for 14 days after out of state travel[.]"  The trial court attached a copy of the email as an exhibit to its entry.

{¶11}  Mr. Smith argues that the October continuance was not reasonable.  He argues that the courthouse was not closed, pandemic safety precautions were in place in the courtrooms, and a judge, all counsel, and all witnesses were available.  He, therefore, argues that the trial court should have granted his motion to dismiss under Section 2945.73.

{¶12}  The Ohio Supreme Court has recognized that "continuing a trial because of a pandemic state of emergency is 'reasonable'" under Section 2945.72(H).  *In re Disqualification of Fleegle*, 161 Ohio St.3d 1263, 2020-Ohio-5636, ¶ 7, quoting R.C. 2945.72(H).  In *Fleegle*, it explained that a judge's priority during a public-health emergency "must be the health and safety of court employees, trial participants, jurors, and members of the public entering the courthouse." *Id*. at ¶ 8.  It also explained that "trial judges have the authority to continue trials for defendants on a case-by-case basis without violating speedy-trial requirements." *Id*. at ¶ 7.

{¶13}  The administrative judge's refusal to let Mr. Smith's trial proceed was based on that judge's idea of the pervasiveness of COVID-19 in the area, including information expressed by the administrative judge, but not in the record, of a significant rise in number of diagnosed cases, which the administrative judge believed would place the alleged victims and other witnesses, some of whom who had to travel from out of state, at increased risk of contracting coronavirus.  Although Mr. Smith alleges that pandemic-safety precautions were in place in the courthouse, he has not cited anything in the record that establishes the extent of those precautions or whether they were adequate to keep jurors and witnesses protected from COVID-19, thereby

making the administrative judge's order prohibiting the trial from going forward unreasonable. The trial court found, based on the standing order of the administrative judge and that judge's specific refusal to let Mr. Smith's trial proceed, that it was "unavailab[le]." Mr. Smith has not pointed to any contrary information in the record that would disprove the court's unavailability.

{¶14} Upon review of the record, we conclude that Mr. Smith has not established on appeal that the trial court's factual findings are not supported by competent, credible evidence. *See State v. Morehead*, 9th Dist. Medina No. 22CA0021-M, 2023-Ohio-1314, ¶ 17, *State v. Thomas*, 9th Dist. Summit No. 29497, 2020-Ohio-3539, ¶ 21. He also has not established that the continuance of the October 19, 2020, trial date was unreasonable under Section 2945.72(H). The trial court, therefore, did not err when it denied Mr. Smith's motion to dismiss. Mr. Smith's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

PRENTICE SMITH WAS DENIED DUE PROCESS AND A FAIR TRIAL BY PREJUDICIAL JOINDER OF THE OFFENSES, IN VIOLATION OF THE 5TH, 6TH, AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶15} In his second assignment of error, Mr. Smith argues that the trial court incorrectly denied his motion to sever. In particular, he argues that the counts related to V.G. should have been tried separately because V.G.'s allegation that a firearm was involved made those offenses dissimilar to the ones involving the other victims.

{¶16} "The law favors joining multiple criminal offenses in a single trial[.]" *State v. Franklin*, 62 Ohio St.3d 118, 122 (1991). Notwithstanding that policy, Criminal Rule 14 provides that, "[i]f it appears that a defendant * * * is prejudiced by a joinder of offenses * * *, the court shall order an election or separate trial of [the] counts * * *." To prevail on a claim that the trial

court erred in denying a motion to sever, the defendant normally "has the burden of demonstrating three facts." *State v. Schaim*, 65 Ohio St.3d 51, 59 (1992).

> He must affirmatively demonstrate (1) that his rights were prejudiced, (2) that at the time of the motion to sever he provided the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and (3) that given the information provided to the court, it abused its discretion in refusing to separate the charges for trial.

*Id.*

{¶17} The State can overcome a defendant's claim that he was prejudiced by the joinder of offenses by showing that it could have introduced evidence of the joined offenses as "other acts" evidence under Evidence Rule 404(B). *Id.* at ¶ 62. It can also overcome a claim of prejudice if the evidence of each crime was simple and direct, such that "the jury is believed capable of segregating the proof on each charge." *State v. Roberts*, 62 Ohio St.2d 170, 175 (1980). "For the appellate court to reverse a trial court ruling that denies severance, the accused must show that the trial court abused its discretion." *Franklin* at 122.

{¶18} "A motion to sever made under Criminal Rule 14, however, requires that the defendant renew [his] motion either at the close of the State's case or at the conclusion of all the evidence." *State v. Bean*, 9th Dist. Summit No. 26852, 2014-Ohio-908, ¶ 26. "A renewal of the motion is necessary because a [Criminal Rule] 14 analysis examines any prejudice resulting from the joinder in light of the evidence introduced at trial." *State v. Hoffman*, 9th Dist. Summit No. 26084, 2013-Ohio-1021, ¶ 8. "If a defendant fails to renew his motion, he forfeits the issue for appeal, save for a claim of plain error." *State v. Garcia*, 9th Dist. Summit Nos. 27810, 27811, 2016-Ohio-4667, ¶ 14, citing *Bean* at ¶ 27.

{¶19} Although Mr. Smith filed a pre-trial motion to sever, he did not renew it at either the close of the State's case or the conclusion of all the evidence. He, therefore, has forfeited

review of his motion except for plain error. In order to establish plain error, Mr. Smith "must establish that an error occurred, it was obvious, and it affected his * * * substantial rights." *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, ¶ 64. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶20} Mr. Smith argues that the circumstances of the counts involving V.G. were different because they did not involve an allegation that Mr. Smith blocked V.G's escape through the passenger side door of his car. The other cases also did not involve any threats against the women and the sexual conduct occurred in the front passenger seat of the car instead of the backseat. He, therefore, argues that they would not have constituted "other acts" evidence under Evidence Rule 404(B). Mr. Smith further argues that the testimony about the alleged use of a firearm during that incident was so inflammatory that it unfairly prejudiced him as to the other counts, even if the evidence related to each incident was simple and distinct.

{¶21} Regarding whether Mr. Smith was prejudiced by the joinder of all the counts, Mr. Smith merely speculates that V.G.'s testimony that he threatened her with a firearm to get her to comply was prejudicial as to the other offenses. Upon review of the record, we conclude that this speculation is insufficient to establish that there was an obvious error that affected Mr. Smith's substantial rights as well as the extraordinary circumstances under which this Court would notice such error. Mr. Smith's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

PRENTICE SMITH'S CONVICTIONS FOR RAPE AND KIDNAPPING AND RELATED SPECIFICATIONS VIOLATED DUE PROCESS AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONTRARY TO THE 5TH AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE 1, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶22} In his third assignment of error, Mr. Smith argues that his convictions were against the manifest weight of the evidence. When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence pertains to the greater amount of credible evidence produced in a trial to support one side over the other side. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). An appellate court should only exercise its power to reverse a judgment as against the manifest weight of the evidence in exceptional cases. *State v. Carson*, 9th Dist. Summit No. 26900, 2013-Ohio-5785, ¶ 32, citing *Otten* at 340.

{¶23} Mr. Smith argues that his testimony provided a more consistent explanation of the evidence. Regarding V.G., he argues that there was no corroborating evidence that he had ever owned or possessed a firearm, let alone that he threatened her with one during their encounter. Regarding A.C., M.S., and T.S., he notes that it was undisputed that all the women willingly got into Mr. Smith's car. Two of the women also admitted that they agreed to have sex with him. He argues that none of the alleged victims had any bruises or other signs of physical injury, including to their private areas, despite claims by T.S. and M.S. that they fought with him and that he forced them to have non-consensual vaginal and anal sex with him. According to Mr. Smith, the time of day, location, and manner of initial contact with the women was also consistent with prostitution.

{¶24} Mr. Smith has not identified any significant inconsistencies between what the women initially reported to law enforcement or medical personnel and their testimony at trial. The fact that the women did not have visible injuries does not mean that they did not fight with Mr.

Smith, and they all testified that they relented to the sexual conduct after Mr. Smith threatened, scared, or overpowered them. Although two of the women acknowledged that they initially agreed to have sex for money with Mr. Smith, they had changed their mind before the sexual conduct occurred. Mr. Smith also admitted that he would sometimes trick prostitutes by misleading or refusing to pay them after engaging in sexual conduct.

{¶25} The jury was in the best position to assess the credibility of the witnesses and decide whether the women were telling the truth when they stated that they did not consent to sexual intercourse with Mr. Smith. *State v. Piatt*, 9th Dist. Wayne No. 19CA0023, 2020-Ohio-1177, ¶ 36. Upon review of the record, we conclude that Mr. Smith has not established that this is the exceptional case where the evidence weighs heavily against his convictions. *See id*. at ¶ 37. Mr. Smith's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

PRENTICE SMITH WAS DENIED DUE PROCESS WHEN THE TRIAL COURT IMPOSED CONSECUTIVE SENTENCES FOR KIDNAPPING, IN VIOLATION OF THE 5TH AND 14TH AMENDMENTS OF THE U.S. CONSTITUTION AND ARTICLE 1, SECTIONS 1, 6, AND 10 OF THE OHIO CONSTITUTION.

{¶26} In his fourth assignment of error, Mr. Smith argues that the trial court incorrectly sentenced him to consecutive sentences. He argues that the trial court failed to make the findings required by Section 2929.14(C)(4) to impose consecutive sentences, which violated his due process rights. When reviewing a felony sentence, "[t]he * * * standard for review is not whether the sentencing court abused its discretion." R.C. 2953.08(G)(2). "[A]n appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence" that: (1) "the record does not support the trial court's findings under relevant statutes[,]" or (2) "the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-

1002, ¶ 1. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶27} Section 2929.14(C)(4) provides that, "[i]f multiple prison terms are imposed on an offender for convictions of multiple offenses," the sentencing court may require the offender to serve the terms consecutively "if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public[.]" The court must also find "any" of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a-c).

{¶28} In *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, the Ohio Supreme Court held that Section 2929.14(C)(4) "requires the trial court to make statutory findings prior to imposing consecutive sentences," and that Criminal Rule 32(A)(4) "directs the court to state those findings at the time of imposing sentence." *Id*. at ¶ 26. It explained, however, that a "word-for-word recitation of the language of the statute is not required[.]" *Id*. at ¶ 29. Instead, "as long as the reviewing court can discern that the trial court engaged in the correct analysis and can

determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id*.

{¶29} Mr. Smith notes that the trial court made the specific findings required under Section 2929.14(C)(4)(b) in its sentencing entry. He argues, however, that it did not make the requisite findings at the sentencing hearing.

{¶30} At the sentencing hearing, the trial court found that Mr. Smith was the worst form of the offender and a threat to the community if he were ever allowed to walk free. We, therefore, agree with the State that the court adequately found that consecutive sentences are necessary to protect the public from future crime and that they are not disproportionate to the seriousness of Mr. Smith's conduct and to the danger he poses to the public. Regarding subsection (C)(4)(b), the State argues that the court found that Mr. Smith committed at least two of the offenses as part of a course of conduct because it commented on the fact that Mr. Smith would "pick up a woman who's in a vulnerable circumstance alone at night or in the morning walking by themselves." The court also found that Mr. Smith believed that just because a woman is walking along a street, that if she would get into his car then it meant she was consenting to sex. The State argues that the court found that the harm committed was so great that no single prison term would adequately reflect the seriousness of Mr. Smith's conduct when it stated that Mr. Smith's conduct was some of the "most egregious that I have ever witnessed" and he was "the worst form of the offender and a threat to our community if you ever walk free."

{¶31} Although the trial court did not use the exact language of the statute, we conclude that it engaged in the correct analysis when it determined whether to order consecutive sentences. Mr. Smith has not established that the trial court failed to comply with Section 2929.14(C)(4) or violated his due process rights. Mr. Smith's fourth assignment of error is overruled.

III.

**{¶32}** Mr. Smith's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JENNIFER HENSAL
FOR THE COURT

FLAGG LANZINGER, J.
CONCURS.

STEVENSON, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

RICHARD P. KUTUCHIEF, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.